347 S.E.2d 220

**Anthony ROGLIANO**

**v.**

**The FAYETTE COUNTY BOARD OF EDUCATION.**

**No. 16721.**

Supreme Court of Appeals of West Virginia.

June 24, 1986.

Dissenting Opinion July 10, 1986.

Lee H. Adler, Beckley, for appellant.

C. Elton Byron, Jr., Abrams, Byron, Henderson & Richmond, Beckley, for appellee.

PER CURIAM:

This is an appeal from a final order of the Circuit Court of Fayette County, entered May 31, 1984, which denied the petition of the appellant, Anthony L. Rogliano, for a writ of certiorari and upheld his dismissal from employment by the Fayette County Board of Education. A majority of this Court concludes that the evidence did not warrant dismissal of the appellant, and we reverse the judgment of the circuit court.

The appellant was employed as a permanent substitute teacher in the Fayette County school system. On February 17, 1982, he was arrested and charged with possession of marijuana, a misdemeanor, following a police search of his home.

By letter dated February 19, 1982, the appellant was suspended without pay from his teaching position. At the March 24, 1982 meeting of the Fayette County Board of Education, the Board approved the Superintendent's recommendation that the appellant's suspension be approved and extended "until ... disposition of the charge ... of possession of a controlled substance."

On April 22, 1982, the criminal charges against the appellant were dismissed in magistrate court due to a defect on the face of the warrant issued for the search of the appellant's home. By memorandum dated April 29, 1982, the Superintendent advised the Board of the dismissal of the charges against the appellant and recommended that he be reinstated with back pay. At its May 3, 1982 meeting, however, the Board expressed concern that the charges were dismissed on a technicality and voted to hold a hearing on the merits of the charge. By letter dated May 5, 1982, the appellant was notified of the Board's decision to conduct a hearing "for disposition of your suspension and/or dismissal ... on the charge of possession of a controlled substance."

On May 18, 1982, the Board met in closed session to hear evidence on the substance of the charges against the appellant. The evidence showed that the warrant to search the appellant's home was issued upon the affidavit of Deputy E.K. Lester, who testified that on January 26, 1982, while present in the appellant's home, he observed the appellant produce a bag of marijuana and smoke some of it. Deputy C.D. Dancy, who executed the search warrant, testified that the police seized a quantity of marijuana seeds, drug paraphernalia containing marijuana residue and two small "roaches," or remains of marijuana cigarettes. Deputy Dancy and Deputy P.A. Tygrett, Jr. testified that analysis of the seized items revealed that they contained .2 grams of marijuana.

The appellant, who appeared without counsel, did not cross-examine these witnesses or offer evidence to refute their testimony. Instead, a representative of the West Virginia Education Association (WVEA) who appeared on the appellant's

behalf challenged the validity of the proceedings on procedural grounds, asserting, in part, that the Board had no authority to dismiss the appellant because the evidence had not shown a correlation between the alleged misconduct and the appellant's ability to teach.[1]

At the conclusion of the hearing the Board retired to Executive Session to consider the evidence. By letter dated June 3, 1982, the appellant was notified that the Board had voted to dismiss him from his teaching position.

On September 30, 1982, the appellant, now represented by counsel, filed with the Circuit Court of Fayette County a petition for a writ of certiorari. The appellant raised the same issues asserted by the WVEA representative at the hearing before the Board and sought reinstatement to his former position, back pay and attorney fees. The circuit court issued a rule to show cause, and the matter was submitted upon the record and upon the briefs of the parties.

The circuit court issued its findings and conclusions in a letter dated April 4, 1983 and an order entered May 13, 1983. The court found that the evidence conclusively demonstrated that the appellant had, in fact, possessed and used marijuana. The court also found, however, that there was no evidence in the record to show that the appellant's misconduct had impaired his ability to teach and ordered the case remanded for further proceedings before the Board on this issue.

As a result of the circuit court's ruling, the Board, on April 20, 1983, reinstated the appellant, without assignment, for pay purposes. No back pay was awarded.

A hearing was conducted before the Board on June 13, 1983. The appellant introduced into evidence a teacher evaluation, apparently conducted by the school administration just prior to the appellant's arrest, which rated his classroom performance as average, above average or excel-

lent in all categories. The appellant also offered a number of witnesses who testified that they were satisfied with the manner in which the appellant had taught their children in the past and that they did not believe his arrest, the publicity attendant to it or his alleged possession of marijuana had adversely affected his ability to teach or his reputation in the schools or in the community. The appellant also denied, for the first time, the substance of the charges by offering the testimony of Michael Lloyd, who testified that the marijuana seized by the police had belonged to him and not to the appellant.

The school administration presented the testimony of two county school principals, who testified that the appellant's arrest and reinstatement had been a topic of discussion among teachers and parents, several of whom had threatened to remove their children from classrooms in which the appellant was allowed to teach. These witnesses testified that drug use violated the conservative moral standards of many of the communities served by their schools and that the publicity attendant to the appellant's reinstatement had affected his ability to function as a teacher by damaging his image as a role model and exemplar of morality and would cause students who were aware of the publicity to have less respect for him as a teacher, resulting in discipline and learning problems in the classroom.

At the close of the hearing, counsel for the administration requested a continuance on the ground that other witnesses who were to testify had not appeared, perhaps due to some confusion as to the date of the hearing. Over the objection of the appellant's counsel, the Board granted the continuance, and a second hearing was conducted on July 7, 1983.

At this second hearing, the administration presented a number of witnesses, all parents of school age children, who testified, in essence, that the appellant had a

---

1. The WVEA representative also asserted that the Board had failed to provide the appellant with adequate notice of the charge against him or a prompt hearing and had no authority to dismiss the appellant because the criminal charges had been dropped. These allegations form no part of this appeal and will not be considered by this Court.

general reputation as a drug user among school students and in the community before his arrest and that they would not allow their children to attend classes taught by the appellant. The administration also presented the testimony of a third county school principal, who testified in accordance with her colleagues as to the adverse effect on the appellant's effectiveness as a teacher of the publicity surrounding his reinstatement.

The appellant testified on his own behalf, denying that he had smoked marijuana in the presence of Deputy Lester or that the marijuana seized by the police belonged to him. The appellant also asserted that he did not endorse the use of marijuana and did not believe that his arrest or the publicity surrounding it had impaired his ability to teach.

On July 22, 1983, the Board issued its findings. The Board found that the appellant had a general reputation in the community as a drug user which was heightened by the publicity resulting from his arrest for possession of marijuana. The Board further found that use of marijuana indicated a defect of character inconsistent with community standards of morality, and that, due to the notoriety surrounding his arrest, the appellant could no longer function effectively as a role model or exemplar of morality within the community and would cause disruption in the schools and reflect discredit on the Board if he were reinstated. Upon these findings, the Board concluded that the appellant's conduct had impaired his ability to discharge his responsibilities as a teacher, and, by unanimous vote, dismissed the appellant from his teaching position.

On October 17, 1983, the appellant filed with the circuit court a second petition for a writ of certiorari asserting that the Board had erred in refusing to award the appellant back pay for the period from February 19, 1982 to April 20, 1983 and that the evidence did not support the Board's conclusion that he was unfit to teach. A rule to show cause was issued, and the parties submitted briefs on the matter. By order entered May 31, 1984,

the circuit court affirmed the Board's ruling and denied the writ of certiorari prayed for. It is from this order that the appellant prosecutes this appeal.

At the outset, we note that W.Va. Code § 18A-2-8 [1969], the statute in effect at the time of the appellant's suspension, authorized the Board to suspend or dismiss a teacher for "[i]mmorality, incompetency, cruelty, insubordination, intemperance or willful neglect of duty." At no time during the proceedings below, was the appellant ever expressly charged with having violated one of these statutory grounds for dismissal. In this appeal, however, the appellant does not urge error in this omission, and the parties appear to agree that the ground for the appellant's discharge was immorality.

In *Golden v. Board of Education*, 169 W.Va. 63, 285 S.E.2d 665 (1982), we held that a county board of education could not discharge a teacher from employment under W. Va. Code § 18A-2-8 merely because the teacher had engaged in activities which the board found to be "immoral." We noted that the term "immorality" as used in the statute was incapable of precise definition and concluded that if the decision to suspend or dismiss a teacher were based solely on the board's examination of the teacher's conduct, it could result in a statute void for vagueness or in an unwarranted intrusion into the teacher's right of privacy. Accordingly, we held that "[i]n order to dismiss a school board employee for acts performed at a time and place separate from employment, the Board must demonstrate a 'rational nexus' between the conduct performed outside of the job and the duties the employee is to perform." Syllabus point 2, *Golden v. Board of Education*, 169 W.Va. 63, 285 S.E.2d 665 (1981). *See also Thurmond v. Steele*, 159 W.Va. 630, 225 S.E.2d 210 (1976). This "rational nexus" exists in at least two circumstances:

(1) if the conduct directly affects the performance of the occupational responsibilities of the teacher; or (2) if, without contribution on the part of the school officials, the conduct has become the sub-

ject of such notoriety as to significantly and reasonably impair the capability of the particular teacher to discharge the responsibilities of the teaching position. *Jerry v. Board of Education of City School District of Syracuse*, 35 N.Y.2d 534, 364 N.Y.S.2d 440, 324 N.E.2d 106, 111 (1977). 285 S.E.2d at 669.

In this case, there was no evidence that the appellant's alleged misconduct had directly affected his performance of his occupational responsibilities. Indeed, the vast majority of the evidence relating to the appellant's classroom performance was favorable to him. Instead, the circuit court concluded that the evidence showed that the appellant had become the subject of such notoriety in the community as to impair, indirectly, his ability to function as a teacher.

After carefully reviewing all of the evidence in the record, we are of the opinion that the circuit court erred in upholding the appellant's discharge on this ground. Viewed in the light most favorable to the Board, the evidence does show that the appellant achieved a certain degree of notoriety in the community following his reinstatement by the Board in April 1983. It appears from the testimony that there was substantial publicity surrounding the reinstatement, although no examples of it appear in the record before this Court. It further appears that this publicity gave rise to discussion of the appellant in the community and to complaints from four or five parents.

■ There is little evidence, however, of any notoriety surrounding the appellant before his reinstatement in April 1983. The professional educators who appeared on behalf of the school administration testified that they could not recall much discussion of the case or any complaints about the appellant prior to that time. Similarly, al-

though a number of parents testified that the appellant had a reputation in the community as a drug user which pre-existed his arrest on the possession charge,[2] there is no evidence that any of them brought this fact to the Board's attention prior to April 1983.

The inference that we draw from this evidence is that the appellant's notoriety in the community was, in some part, attributable to the actions of the Board. Although the principles of *Golden* had been enunciated by this Court and were in effect at the time of the Board's initial hearing into the appellant's alleged misconduct on May 18, 1982, no evidence was offered at that time as to the effect of such behavior on the appellant's ability to teach, either by showing direct impairment of his occupational responsibilities or by showing a widespread adverse public reaction to his remaining in the schools. It was not until the Board was forced by the circuit court to correct this error by reinstating the appellant almost a year after the charges had been dismissed that there was any evidence of community reaction to the allegations of the appellant's drug use. Even then, the school administration required additional time and further proceedings to marshal its witnesses as to the appellant's general reputation. It appears from the testimony that there was additional publicity surrounding the appellant at each stage of the administrative proceedings.

■ Upon these facts, we conclude that the Board, by its initial failure to comply with the mandate of *Golden*, unnecessarily protracted the proceedings against the appellant, thereby contributing to whatever notoriety he may have attained in the community as a result of his arrest. We do not mean to imply that the mere fact that disciplinary proceedings against a teacher give rise to adverse publicity is sufficient in

2. We recognize that evidence of a teacher's general reputation in the community, based on hearsay evidence, may be admissible as an exception to the hearsay rule in a proceeding such as this where the character of the teacher becomes a crucial issue in the case. *See, e.g., James v. West Virginia Board of Regents*, 322 F.Supp. 217 (S.D.W.Va.) *aff'd*, 448 F.2d 785 (4th Cir.1971). We note, however, that much of the reputation evidence offered by certain of the parents who testified involved incidents totally unrelated to the charges against the appellant and which had apparently never been reported to the Board prior to the July 7, 1983 hearing. This type of character assasination is offensive to this Court and is expressly disapproved.

and of itself to preclude a county board from dismissing a teacher in appropriate circumstances. We merely hold that in these circumstances and upon the particular facts of this case, we believe he adverse publicity was attributable, at least in part, to the Board. This inference is buttressed by the fact that the evidence of the appellant's notoriety and reputation in the community was by no means uncontradicted.

Since there is no evidence that the Board's contribution to the appellant's notoriety was intentional, it is difficult to quantify its adverse effect. We believe, however, that when that factor is considered along with the fact that the appellant was, by all accounts, an above average teacher who was well-liked by his students, that the misconduct occurred in private and did not directly involve any student or school personnel, and that he was charged only with a misdemeanor[3] for possession of a small amount of marijuana, the evidence was insufficient to warrant the termination of his employment.

Accordingly, we reverse the judgment of the Circuit Court of Fayette County and remand the case to the Fayette County Board of Education with directions to reinstate the appellant to his former position.

Reversed and remanded.

NEELY, Chief Justice, dissenting:

The majority today fails to find a rational nexus between a teacher's drug use and his ability to perform his occupational duties. Because I believe this construes the occupational duties of a public school teacher far too narrowly, I dissent.

As I pointed out in my dissent to *Golden v. Board of Education,* 169 W.Va. 63, 285 S.E.2d 665 (1981), school attendance is compulsory in West Virginia—all children between the ages of seven and sixteen must be under the supervision of county boards of education irrespective of whether they are enrolled in public schools, private schools, or privately tutored. *W.Va. Code* 18-8-1 [1983]. Since the vast majority of parents in this state cannot afford private instruction for their children, they are required to dispatch their children on a daily basis to the local public school.

For approximately seven hours a day, five days a week—nearly half of a child's waking existence—the children of this State are a captive audience of the teachers hired by local boards of education. During the impressionable school-age years, teachers are not merely instructors in sciences and letters. They are authority figures, role models, behavioral examples, surrogate parents. After a fashion, teachers stand *in loco parentis.* Children learn much more from their teachers than the quadratic equation and the proper spelling of "dirndl"—they learn important values and morals. One of the most important values children learn from their teachers is respect for the law. If the state may require parents to relinquish their children to the influence of public school teachers on a daily basis, then surely it is reasonable for parents to demand that public school teachers adhere to standards of conduct consonant with the moral standards of the community, especially when such conduct is required by law.

Federal, state and local governments spend millions of dollars each year teaching school-age children about the dangers of using illegal drugs. The legislature has determined that marijuana use is dangerous and ought to be prohibited by law. Accordingly, possession of marijuana is a crime in this State. *W.Va. Code* 60A-1-101 [1983], 60A-2-204(d)(13) [1983], 60A-4-401(c) [1983]. Moreover, it is a crime that many members of the community in which appellant teaches view as one of moral turpitude. The parents of Fayette County have, through their elected representatives on the board of education, determined that they do not wish to maintain appellant in a position of authority and influence with

---

**3.** W.Va. Code § 60A-4-401(c) (1984 Replacement Vol.) provides that simple possession of a controlled substance is a misdemeanor. The statute further provides that for first offense possession of less than 15 grams of marijuana, disposition shall be under W. Va. Code § 60A-4-407 which provides for expurgement of the offender's criminal record upon completion of certain conditions.

respect to their children. Yet the majority has determined that parents in Fayette County must have their children involuntarily subjected to the influence of an authority figure and role model who advocates, at least by example, the use of illegal drugs.

Teaching is not like driving rivets. It is not merely the rote, mechanical conveyance of factual information from one mind to another. It is the shaping of young minds, the cultivation of a precious resource. A teacher is the bailee of a parent's most valued possession—his child. As such the teacher bears responsibilities far greater than those borne by most government employees. Almost any conduct of a teacher that advocates by example the commission of crime bears a rational nexus to his occupational duties; and conduct that advocates by example the use of illegal drugs certainly bears such a nexus.

I am authorized to say that Justice BROTHERTON joins me in this dissent.