394 S.E.2d 885

**Daniel J. BLEDSOE**

v.

**WYOMING COUNTY BOARD OF EDUCATION.**

No. 19198.

Supreme Court of Appeals of West Virginia.

June 12, 1990.

Rehearing Denied July 24, 1990.

MILLER, Justice:

The Wyoming County Board of Education (Board) appeals from an adverse ruling in the Circuit Court of Wyoming County. The circuit court affirmed a Level IV hearing examiner's decision under W.Va. Code, 18–29–4, which ordered that Daniel J. Bledsoe, the Board's maintenance supervisor, be reinstated to his position with back pay.

The Board discharged Mr. Bledsoe on November 9, 1988, after he entered a guilty plea in federal district court, pursuant to a plea agreement, to charges of conspiracy to extort money, apparently in violation of 18 U.S.C. § 371 (1984) and § 1951 (1986). Mr. Bledsoe solicited a $1,000 political contribution from a Mr. Huffman, who supplied material to the Board.

During the sentencing hearing, the federal judge found that Mr. Bledsoe had been asked to collect contributions by the county superintendent of schools. Furthermore, the judge commented that Mr. Bledsoe was under the impression that his continued employment depended on his participation and he did not receive any part of the contribution. In exchange for the guilty plea, the government agreed to dismiss a pending indictment which charged Mr. Bledsoe with obstruction of justice under 18 U.S.C. § 1623 (1976) for lying to the grand jury about the extortion incident. The federal court imposed a six-month jail sentence, which was suspended. Mr. Bledsoe was placed on probation for five years and was fined $5,000.

Mr. Bledsoe protested his dismissal by the Board. After following the appropriate grievance procedures, a hearing examiner concluded that Mr. Bledsoe had been dismissed without cause. The Board appealed to the Circuit Court of Wyoming County, which, by order dated May 26, 1989, affirmed the hearing examiner's findings and conclusions and ordered Mr. Bledsoe reinstated.

The Board asserts that the circuit court erred in concluding that the Board failed to show a rational nexus between Mr. Bledsoe's criminal act and his fitness to perform his work as required by *Golden v.*

D. Grove Moler, Moler and Staton, Mullens, Warren R. McGraw, Pineville, for Wyoming County Bd. of Educ.

Erwin L. Conrad, Conrad & Clay, Fayetteville, for Daniel J. Bledsoe.

John Everett Roush, WV School Service Personnel Assoc., Charleston, Franklin D. Cleckley, Morgantown, amicus curiae Briefs on Behalf of the appellee.

*Board of Education,* 169 W.Va. 63, 285 S.E.2d 665 (1981). In *Golden,* we elaborated on the rational nexus test which was earlier stated in *Thurmond v. Steele,* 159 W.Va. 630, 225 S.E.2d 210 (1976). In *Thurmond,* we reversed the dismissal of a civil service employee following his conviction of reckless driving on the ground that the criminal charge was "based on conduct which [had] no rational nexus with the duties to be performed or the rights and interests of the public." 159 W.Va. at 635, 225 S.E.2d at 213. (Citations omitted).

In *Golden,* a teacher entered a nolo contendere plea in magistrate court to a misdemeanor theft charge and was fined $100. She was discharged by the county board of education on the ground that she had committed an act of immorality in violation of W.Va.Code, 18A–2–8 (1985),[1] which is the statute under which Mr. Bledsoe was discharged.[2]

■ We discussed in *Golden* how other courts have handled this problem: "Thus, the courts look first to the question of immoral behavior and then to see if that behavior has in some way made the teacher unfit to carry out his or her responsibilities or if it has impaired or threatened the welfare of the school community." 169 W.Va. at 68, 285 S.E.2d at 669. (Citations omitted). We also identified two specific tests to determine how the questioned conduct of the employee should be analyzed to see if a dismissal was warranted:

"(1) if the conduct directly affects the performance of the occupational responsibilities of the teacher; or (2) if, without contribution on the part of the school officials, the conduct has become the sub-

ject of such notoriety as to significantly and reasonably impair the capability of the particular teacher to discharge the responsibilities of the teaching position." 169 W.Va. at 69, 285 S.E.2d at 669. (Citation omitted).

We concluded in *Golden* that the board had failed to make an evaluation under these standards, and, as a consequence, the record did not support Ms. Golden's dismissal. We summarized our discussion in Syllabus Point 2:

"In order to dismiss a school board employee for acts performed at a time and place separate from employment, the Board must demonstrate a 'rational nexus' between the conduct performed outside of the job and the duties the employee is to perform."

■ In the present case, it is apparent that Mr. Bledsoe's criminal conduct directly related to his work. As the maintenance supervisor, he was in charge of purchasing a variety of materials for the Board. To extract a political contribution from a supplier strikes at the very heart of the integrity of his job. In the words of *Golden,* this "conduct directly affects the performance of the occupational responsibilities" of the employee. 169 W.Va. at 69, 285 S.E.2d at 669. Consequently, where a school board employee commits a criminal act directly involving the employee's occupational responsibilities, a rational nexus exists, and the employee may be dismissed.

■ Mr. Bledsoe argues, and the Board does not appear to disagree, that he had a good work record and had a good reputation in the community. This evidence was developed at the Level IV hearing by Mr.

---

1. W.Va.Code, 18A–2–8, provides:

"Notwithstanding any other provisions of law, a board may suspend or dismiss any person in its employment at any time for: Immorality, incompetency, cruelty, insubordination, intemperance or willful neglect of duty, but the charges shall be stated in writing served upon the employee within two days of presentation of said charges to the board. The employee so affected shall be given an opportunity, within five days of receiving such written notice, to request, in writing, a level four hearing and appeals pursuant to provisions of article twenty-nine [§ 18–29–1 et

seq.], chapter eighteen of the code of West Virginia, one thousand nine hundred thirty-one, as amended."

Prior to 1985, W.Va.Code, 18A–2–8, had the same language with regard to the grounds for suspension or dismissal of an employee, but did not refer to a Level IV grievance procedure because the grievance procedure for school board employees was not enacted until 1985. *See* W.Va.Code, 18–29–1, *et seq.*

2. No argument is made in this case that the felony conviction was not cause for dismissal on grounds of immorality.

Bledsoe. Whether a school board employee has a good work record and is well thought of in the community are not controlling factors where the criminal conduct of the employee bears directly on the employee's occupational responsibilities, as is evidenced from the foregoing language from *Golden.*

Moreover, our other cases relying on *Golden* and cited by Mr. Bledsoe are not to the contrary. *Rovello v. Lewis County Bd. of Educ.,* 181 W.Va. 122, 381 S.E.2d 237 (1989); *Waugh v. Board of Educ.,* 177 W.Va. 16, 350 S.E.2d 17 (1986); *Rogliano v. Fayette County Bd. of Educ.,* 176 W.Va. 700, 347 S.E.2d 220 (1986). In none of these cases was the school employee convicted of any crime. In *Rogliano* the employee was actually arrested, but the charge was subsequently dismissed. None of the accusations made against the employees in these cases had a direct bearing on the employee's work responsibility, as is the case here.

In *Rovello,* the employee had taken his girlfriend to a seminar and had not paid separately for her accommodations. He claimed that the custom was to permit spouses to be covered under the travel expenses of a teacher, and he believed that this would also apply to his girlfriend. *Waugh* involved a school janitor who did janitorial work for a clinic in addition to his custodial work at an elementary school. One evening, after becoming intoxicated, Mr. Waugh stole $25 in cash, a radio, and a tool box from the clinic. He returned the goods prior to his disciplinary hearing. *Rogliano* involved a teacher who was ac-

cused of possessing a small amount of marijuana in his home.

■ These cases reflect situations where the employee's misconduct was independent of his employment duties with the school system. The misconduct had no direct relationship or nexus to ordinary school activities and arose from incidents outside the scope of the employee's regular employment. The rational nexus test contained in Syllabus Point 2 of *Golden* applies exclusively to "acts performed at a time and place separate from employment." Where, as here, the employee uses his office to extort funds from a supplier of his employer, this test does not apply.

■ Mr. Bledsoe points to the federal judge's remarks regarding the pressure from the county school superintendent to collect the money. It was not asserted that this can constitute a valid defense to the crime. Moreover, we note that at the sentencing hearing, the judge made this statement:

"The Court finds that at the defendant's guilty plea he acknowledged committing those acts which he previously denied under oath at the grand jury hearing on April 11, 1988, and that his untruthfulness on April 11, 1988, did obstruct the grand jury investigation into Hobbs Act violations in Wyoming County, and the plea agreement does not change the undisputed fact that the defendant's offense conduct (that is, lying before the grand jury) did, in fact, obstruct justice." [3]

3. Mr. Bledsoe attempts to raise several due process arguments because the Board did not accord him a pretermination hearing. At the Level IV hearing, these issues were waived as both parties agreed to have the matter heard on the merits. Consequently, these issues were not addressed by the hearing examiner nor by the circuit court, and, therefore, we do not address them. *See* Syllabus Point 2, *Duquesne Light Co. v. State Tax Dep't,* 174 W.Va. 506, 327 S.E.2d 683 (1984), *cert. denied,* 471 U.S. 1029, 105 S.Ct. 2040, 85 L.Ed.2d 322, (1985). Under W.Va. Code, 18A–2–8, a hearing before the Board is not required because the employee may proceed immediately to a Level IV grievance procedure. For the applicable text of W.Va.Code, 18A–2–8 (1985), *see* note 1, *infra.*

While an argument is made as to the Board's failure to carry its burden of proof, by joint stipulation various documents relating to Mr. Bledsoe's guilty plea and sentence in the federal district court were entered as exhibits at the Level IV hearing. This information, upon which the Board relied, was sufficient to establish the proof of conviction and related facts. As we indicated in Syllabus Point 2 of *Committee on Legal Ethics v. Six,* 181 W.Va. 52, 380 S.E.2d 219 (1989): "Where there has been a final criminal conviction, proof on the record of such conviction satisfies the Committee on Legal Ethics' burden of proving an ethical violation arising from such conviction."

For these reasons, the judgment of the Circuit Court of Wyoming County is reversed.

Reversed.