655 S.E.2d 204

**Brian M. POWELL, Petitioner Below, Appellant,**

v.

**Steven L. PAINE, State Superintendent of Schools, Respondent Below, Appellee.**

**No. 33325.**

Supreme Court of Appeals of West Virginia.

Submitted Oct. 23, 2007.

Decided Nov. 21, 2007.

---

James M. Haviland, Pyles Haviland Turner & Mick, L.L.P., Charleston, WV, for the Appellant.

Darrell V. McGraw, Jr., Attorney General, Katherine A. Campbell, Assistant Attorney General, Charleston, WV, for the Appellee.

PER CURIAM.

Petitioner below, Brian M. Powell (hereinafter referred to as "Appellant"), appeals the May 26, 2006, order of the Circuit Court of Kanawha County affirming the decision of the State Superintendent of Schools, Steven L. Paine (hereinafter referred to as "Appellee"), to suspend Appellant's license to teach for four years. After thoroughly examining the arguments of the parties in light of the record before us and the relevant law, the order of the circuit court is reversed and the case is remanded for reinstatement of the teaching certificates.

## I. Factual and Procedural Background

Appellant was a science teacher and head football coach at Moorefield High School in Hardy County, West Virginia.[1] He is also the father of five children.[2]

---

1. Appellant was first certified as a teacher in 1990 and taught in various teaching positions both in and out of the state. He began teaching at Moorefield High School in September 2000.

2. Appellant and his second wife each obtained custody of their children from previous marriages. The blended family includes Appellant's three sons and his wife's daughter and son. As best as can be determined from the record, at the time of the incident Appellant's sons were aged nine, thirteen and sixteen, and his wife's son was sixteen and her daughter was nine.

On September 26, 2004, Appellant's nine-year-old son, who attended Moorefield Elementary School, showed his father a disciplinary note from the school. The note related that the child received discipline for making inappropriate comments in front of his class about an intimate encounter of two students in the class. When questioned by his father about the matter, the son's response was, "I don't know." Appellant picked up a belt near him in the room where the confrontation occurred and repeatedly lashed his son across the back with the belt until the son disclosed the nature of his classroom conduct.

The son went to school the next day and told several classmates that his father had beaten him when he gave his father the disciplinary note. Eventually word of the beating reached the teaching staff and the son was called to the principal's office where the son showed the teachers the welt marks on his left shoulder and back from the beating. Upon seeing the welts, a teacher and a guidance counselor called the West Virginia Department of Health and Human Resources (hereinafter referred to as "DHHR"). As a result, the son and two other children were removed from the Powell home.[3]

The agency immediately filed an abuse and neglect action in the circuit court while continuing its investigation. The parents moved for and were granted an improvement period by the court. During the course of the improvement plan,[4] the thirteen-year-old son was returned to his home within seven days of his removal. The two younger children, including the abused son, were returned to the home approximately two months after the occurrence. As part of the improvement program, Appellant underwent psychiatric evaluation and attended the prescribed coun-

seling. The circuit court dismissed the child abuse and neglect case upon the recommendation of DHHR by order entered on May 10, 2006.

At the same time that DHHR was responding to the school's report, a criminal investigation was begun by the West Virginia State Police. The investigation resulted in Appellant being charged with felony child abuse for beating his son. The prosecutor moved to dismiss the felony charge and tendered a plea agreement to the court by which Appellant pled guilty to one count of the misdemeanor offense of domestic battery. The court accepted the agreement on October 21, 2004, and sentenced Appellant to thirty days of incarceration, which the court allowed to be served on weekends and holidays, and a fine. The imposed penalties have been completely satisfied.

Appellant immediately informed the county superintendent of schools and the principal of Moorefield High School of the beating incident and subsequent occurrences. The first action taken by the school system occurred after Appellant was charged with a felony offense of child abuse. Upon learning of the felony charge, the county superintendent suspended Appellant with pay on October 15, 2004, pending an investigation. After completing his investigation and learning that Appellant's plea agreement with the State had been accepted by the court, the superintendent suspended Appellant without pay on October 29, 2004. The superintendent then recommended to the Hardy County Board of Education (hereinafter referred to as "Board") that Appellant be discharged pursuant to West Virginia Code § 18A-2-8.[5] A hearing was held by the Board on November 16, 2004, at which evidence regarding the

---

3. The abused child, his thirteen-year-old brother and his nine-year-old stepsister were the children removed from the home.

4. Pursuant to the improvement period a multidisciplinary team (hereinafter referred to as "MDT") was formed to develop the improvement plan. The MDT included the prosecuting attorney, DHHR representatives and several guardians ad litem for the children. Appellant relates that the plan called for individual evaluations of each family member, individual counseling for Appellant, his wife and the son involved in the

incident, counseling for the other children, parenting counseling for the mother and father and joint family counseling.

5. West Virginia Code § 18A-2-8 lists the particular grounds upon which a county board of education may suspend and dismiss a person in its employ. The record before us does not disclose upon what specific statutory ground or grounds the superintendent relied when recommending dismissal to the Board.

matter was adduced. During the hearing, the Board rejected the superintendent's recommendation of dismissal, but did "uphold the superintendent's suspension without pay until a satisfactory comprehensive evaluation by a psychiatrist of our choosing determines that he is not a danger to any Hardy County School students and that he will not return back to school before January 1st."

Dr. Allan LaVoie, Ph.D., a practicing psychologist, was selected by the Board to perform the psychological evaluation. Dr. LaVoie's report contained the following with regard to Appellant's return to the classroom:

> [T]o speak to the first question, is he safe to supervise and educate children? It is my opinion, based on the information at hand, that he does not pose a significant risk to the students at Moorefield High School. He has amply demonstrated that he is able to walk away from confrontations, and at school he has in the past simply sent students to the principal's office rather than taking matters personally. There is nothing in the material I have gathered that suggests the school board need be unduly concerned about Mr. Powell's behavior at school. I believe he is at no greater risk of physically harming a student than any other teacher would be.

Based on this report, the Board returned Appellant to his classroom duties on January 12, 2005, but without back pay. As required by West Virginia Code § 18A–3–6 (2004) (Repl.Vol.2007), the county superintendent notified the State Superintendent's Office of the Board's action. Appellant continued to teach without incident until his license to teach was suspended.

At the state level, Appellee generated a Notice of Proceeding Against Certification to Appellant dated October 6, 2005, relating that an investigation by the West Virginia Department of Education had been conducted regarding the incidents surrounding Appellant's corporal punishment of his son. The Notice informed Appellant that proceedings were being initiated to revoke or suspend his teaching certificates based on the incidents surrounding the beating of his son. The Notice further apprised Appellant that a hearing would be held on October 25, 2005, regarding the matter. The hearing was held before the Professional Practices Panel (hereinafter referred to as "the PPP").[6]

After accepting documentary and testimonial evidence, the PPP concluded the hearing by announcing its decision to recommend suspension of Appellant's license to teach for four years. Appellee adopted the written recommendations of the PPP in their entirety and signed an order entered on December 9, 2005, suspending Appellant's license for four years. Pursuant to the provisions of West Virginia Code § 29A–5–4 (1998) (Repl. Vol.2007), Appellant timely appealed the suspension order to the Circuit Court of Kanawha County. After hearing oral arguments, the circuit court upheld the actions of the agency by order dated May 26, 2006. This affirmance is the subject of the appeal now pending, which review we accepted by order entered on February 28, 2007.

## II. Standard of Review

 This case involves a contested administrative agency decision, subject to the provisions of West Virginia Code § 29A–5–4 [7]

---

**6.** Under West Virginia Code § 18A–3–6, the State Superintendent may designate the members of the West Virginia Commission for Professional Standards or its members to conduct revocation hearings and to provide recommendations for action by the superintendent. Pursuant to 126 C.S.R. 154–7.2, the Commission for Professional Standards appoints a PPP, composed of teachers and educational administrators, to conduct these hearings and proffer recommendations to the Superintendent.

**7.** With regard to the statutory standard of review, West Virginia Code § 29A–5–4(g) specifically provides:

> (g) The [reviewing] court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision or order are:
> (1) In violation of constitutional or statutory provisions; or
> (2) In excess of the statutory authority or jurisdiction of the agency; or
> (3) Made upon unlawful procedures; or
> (4) Affected by other error of law; or

. It is well-established that " '[o]n appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W. Va.Code § 29A–5–4[ ] and reviews questions of law presented *de novo;* findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.' Syl. pt. 1, *Muscatell v. Cline,* 196 W.Va. 588, 474 S.E.2d 518 (1996)." Syl. Pt. 1, *Wheeling–Pittsburgh Steel Corp. v. Rowing,* 205 W.Va. 286, 517 S.E.2d 763 (1999). We iterated in *Adkins v. West Virginia Department of Education,* 210 W.Va. 105, 556 S.E.2d 72 (2001), that "the 'clearly wrong' and 'the arbitrary and capricious' standards of review [set forth in West Virginia Code § 29A–5–4(g)] are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." *Id.* at 108, 556 S.E.2d at 75 (citation omitted). A finding is clearly erroneous if there is no substantial evidence in the record supporting it or, where there is evidence to support the finding, the court reviewing the record is left with a definite and firm conviction that a mistake has been made. *Bd. of Educ. of County of Mercer v. Wirt,* 192 W.Va. 568, 579 n. 14, 453 S.E.2d 402, 413 n. 14 (1994).

## III. Discussion

Appellant asserts that the lower court erred by finding that the suspension decision comports with the statutory requirements for suspension of a teaching license. He specifically argues that the record shows that Appellee breached his statutory duty in two ways: (1) by failing to determine whether the incident in question rendered Appellant unfit to teach; and (2) by not ascertaining the existence of a "rational nexus" between the incident and Appellant's performance of his job. Both of these issues call for a close examination of the relevant statute.

Legislatively prescribed prerequisites to the suspension or to revocation of teaching licenses and certificates are set forth in West Virginia Code § 18A–3–6. In relevant part, this statute states:

The state superintendent may, after ten days' notice and upon proper evidence, revoke the certificates of any teacher for any of the following causes: Intemperance; untruthfulness; *cruelty;* immorality; the conviction of a felony or a guilty plea or a plea of no contest to a felony charge; the conviction, guilty plea or plea of no contest to any charge involving sexual misconduct with a minor or a student; or for using fraudulent, unapproved or insufficient credit to obtain the certificates; *Provided,* That the certificates of a teacher may not be revoked for any matter for which the teacher was disciplined, less than dismissal, by the county board that employs the teacher, nor for which the teacher is meeting or has met an improvement plan determined by the county board, unless it can be proven by *clear and convincing evidence* that the teacher has committed one of the offenses listed in this subsection and his or her actions render him or her *unfit to teach; Provided, however,* That in order *for any conduct of a teacher involving* intemperance; *cruelty;* immorality; or using fraudulent, unapproved or insufficient credit to obtain the certificates to constitute grounds for the revocation of the certificates of the teacher, there must be a *rational nexus* between the conduct of the teacher and the performance of his or her job.

(emphasis added). Parsing the statute, it is clear under the first proviso, a teaching license may be revoked or suspended even when a teacher is disciplined but not dismissed at the county level or is meeting or has fulfilled the requirements of an improvement plan of the county board if there is clear and convincing evidence of two things: (1) the teacher's questionable conduct amounted to one of the enumerated "bad acts," *and* (2) the actions rendered the person unfit to teach. Additionally, the second statutory proviso requires that when the alleged conduct specifically involves intemperance, cruelty, immorality, or submission of

(5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

improper proof to obtain teaching certificates there must be further demonstration that a rational nexus exists between the conduct of the teacher and the performance of that person's job before the license to teach may be revoked or suspended.

■ Appellant was disciplined by the county board by having his suspension from employment extended until the next school year and by not being awarded back pay for the period of suspension following his conviction of domestic battery. Thus revocation of license proceedings could be initiated if there was clear and convincing evidence that Appellant's misconduct both constituted one of the causes listed in the statute and rendered him unfit to teach. No challenge is made to the finding of clear and convincing evidence of cruelty[8] in this case. The challenge is that the four-year suspension is not based on clear and convincing evidence that Appellant is unfit to teach.

On an earlier occasion, we discussed disciplinary actions with regard to teacher misconduct in *Golden v. Board of Education of Harrison County*, 169 W.Va. 63, 285 S.E.2d 665 (1981). Although *Golden* involved the disciplinary actions of a county board of education under West Virginia Code § 18A–2–8, the discussion of the principles underlying the need for proof of "fitness to teach" and "rational nexus" are equally relevant here.

■ The teacher in *Golden* had been charged with felony shoplifting and pled no contest to the misdemeanor offense of petty theft. Thus the discipline was for conduct occurring outside of the school setting. We observed in *Golden* it would be an unwarranted intrusion on a teacher's right to privacy to discipline a teacher solely on evidence that statutorily delineated misconduct[9] occurred outside of the school environment. To overcome the privacy interest, a legitimate interest of the school board has to be at stake, that is, there must be additional evidence of a resulting unfavorable impact on the teacher's fitness to teach or upon the school community. *Id.* at 69, 285 S.E.2d at 669. We further observed that dismissal based solely on the off-the-job misconduct of a teacher and not its effect on the teacher's fitness to teach or upon the school community would result in a statute which would be void for vagueness under substantive due process constitutional standards. *Id.* at 68–69, 285 S.E.2d at 669. This discussion resulted in our holding in syllabus point two of *Golden* that "[i]n order to dismiss a school board employee for acts performed at a time and place separate from employment, the Board must demonstrate a 'rational nexus' between the conduct performed outside of the job and the duties the employee is to perform." The 2004 amendments to West Virginia Code § 18A–3–6 impose the same requisite findings on the Superintendent of the State Board of Education with regard to revocation and suspension of the license to teach.

With respect to Appellant's fitness to teach, Appellee maintains that his order of suspension reflects the requisite finding of unfitness by clear and convincing evidence. He asserts that the Board of Education's Teacher Code of Conduct requires all West Virginia teachers to be positive adult role models and a father beating his child does not conform to those standards. Relying on the language of the PPP as part of the suspension order, Appellee maintains that Appellant's unfitness to teach is proven by the statement of the PPP that Appellant's conduct toward his son directly affects his performance of duties as a teacher. Additionally, he maintains that the conclusions of law section of the revocation order sets forth relevant portions of the Employee Code of Conduct for school personnel, and the PPP expressly found Appellant's conduct with his son did not conform with the high standards,

---

**8.** The Notice of Proceeding Against Certification characterized the actionable misconduct as intemperance, cruelty and/or immorality. The PPP Recommended Decision only contains a finding of clear and convincing evidence of cruelty. Inasmuch as Appellee adopted the findings of the PPP in their entirety without independent findings, cruelty is the only ground we consider here.

**9.** At the time *Golden* was decided, the statutory bases for discipline by the county board included immorality, incompetency, cruelty, insubordination, intemperance, or willful neglect of duty. The Act was subsequently amended to add the grounds of unsatisfactory performance, the conviction of a felony or a guilty plea or a plea of nolo contendere to a felony charge.

self-control and moral and/or ethical behavior required by this Code of Conduct. We fail to see from these conclusory statements what anticipated ill-effects Appellant's corporal punishment of his child had or would have on Appellant's fitness to teach or upon the school community. Nor do we see why suspending the teaching certificates for four years will somehow change Appellant so as to be fit to teach. The unrefuted evidence in the record, including the testimony of two counselors—one of whom was providing family counseling to the family at the time of the hearing—and reports of two additional counselors all supported the conclusion that Appellant posed no threat to children in his classroom or other students. Additionally, our thorough and complete examination of the record did not disclose that Appellant exhibited any cruel behavior or even display a mean disposition to students or school personnel in any situation occurring on school grounds or at school functions.[10] All the job evaluations contained in the record involving Appellant's teaching positions both inside and outside the state rated Appellant's performance as satisfactory and did not reveal any deficiencies, reprimands, or mention of any hostile or other unacceptable behavior. The statute is clear that a teaching license may not be revoked or suspended when a county board has disciplined but not dismissed an employee for certain misconduct *unless* the misconduct is shown by clear and convincing evidence to render the person unfit to teach. Accordingly since Appellee's findings as to Appellant's unfitness to teach are not supported by the requisite level of clear and convincing evidence they can not be afforded deferential treatment.

■. The second issue Appellant raises is that Appellee failed to explain the required rational nexus between his misconduct and the performance of the job. Appellee points us to the conclusions of law attached to the order of suspension regarding the nexus finding:

6. A rational nexus exists between a teacher's off-duty conduct and his or [her] duties as a teacher in at least two circumstances: (1) if the conduct directly affects the performance of the occupational responsibilities of the teacher; or (2) if, without contribution on the part of the school officials, the conduct has become the subject of such notoriety as to significantly and reasonably impair the capability of the particular teacher to discharge the responsibilities of the teaching position. *Rogliano v. Fayette County Board of Education*, 176 W.Va. 700, 347 S.E.2d 220 (1986) (per curiam).

7. State Board of Education Policy 5902, the Employee Code of Conduct for school personnel, provides that teachers must maintain a high standard of conduct, self-control and moral/ethical behavior. 126 C.S.R. 162, § 4.2.6.

8. Mr. Powell's conduct with . . . [his son] does not meet high standards, does not demonstrate self-control and does not constitute moral and/or ethical behavior.

9. Therefore, we conclude that a rational nexus does exist between Mr. Powell's conduct at home with his son . . . and his responsibilities as a teacher.

While these findings relate the standards all teachers should meet, and rightly reflect that Appellant's actions toward his son did not meet those standards, they do not satisfy the plain meaning of the license revocation statute with regard to establishing a rational nexus. Simply put, the findings do not state how Appellant's cruelty toward his son can, will or even may be anticipated to affect Appellant's performance of his school job. In this case, that performance would include his classroom responsibilities as well as his coaching duties. Such specificity is woefully lacking in the findings submitted as support of the suspension decision, leaving us with the definite and firm conviction that a mistake has been made in suspending Appellant's certificates to teach.

10. The county superintendent's assertions by way of hearsay about two incidents related to Appellant's coaching responsibilities were either directly denied or candidly explained by Appellant during his testimony before the PPP. Appellant admitted to being penalized for his indiscretion in making an isolated inappropriate comment during a football game, while walking away from an official, in response to an unfavorable ruling.

There is no doubt that the physical punishment Appellant inflicted on his son was egregious and indefensible conduct. Appellant's poor judgment and loss of self-control in dealing with his youngest son's refusal to bend to his father's will has had lasting impact not only on the father and his young, impressionable son but also on the family unit. Perhaps no amount of remorsefulness on the father's part will return this family to where it was before the incident occurred and Appellant has to live with this reality. Nonetheless, Appellant has exhibited a great deal of commitment to his family. He has complied with every request made by DHHR, including those involving various types of counseling and anger management instruction, in order to have his family reunited. He testified that he entered the plea agreement so that he could have all of the children returned to their home as soon as possible since DHHR had informed him that the children would not be returned to the home until the criminal charges were resolved. As a result of his cooperation, the children were all returned to the family unit roughly within two months of the corporal punishment incident. The commitment of both parents to the family unit is repeatedly demonstrated in the record. In support of dismissal by the court of the abuse and neglect action it filed after the beating incident, DHHR said that both parents took initiative to start counseling even before the DHHR improvement plan was put into place. The agency report also noted that the parents not only completed the services recommended, but they also benefitted from the services. While Appellant's past behavior in being cruel to his young son can not be condoned, Appellant has accepted his punishment, has attempted to work on the issue to otherwise atone for his serious transgression and should be encouraged to continue this course of rehabilitation and improvement for the sake of repairing the relationship with the son he injured as well as with the entire family. Absent evidence of any ill-effects on

his ability to teach, Appellant has complied with the redemptive measures established in our society to rehabilitate his behavior and we find no reason why Appellant should not be permitted to resume his teaching career without further delay.[11]

Admittedly, Appellant committed a serious act and is guilty of the crime to which he pled, but the issue before us is limited to whether that act and that crime, committed in the home, has ramifications—proven by clear and convincing evidence—which directly affect Appellant's teaching ability and performance in such a manner as to warrant suspension of his license to teach. When we consider all of the evidence and the remedial steps already taken by the county board, the DHHR, and the court under both its criminal and abuse and neglect jurisdiction, this Court believes that the four-year suspension in this case is not supported by clear and convincing evidence, is the result of a fundamental misapplication of the law governing revocation and suspension of teaching licenses, is clearly wrong in light of the "reliable, probative and substantial evidence" and represents the unwarranted exercise of discretion of the State Superintendent of Schools. W.Va.Code § 29A-5-4(g). Accordingly, we find it necessary to reverse the circuit court's order affirming the agency's action suspending the Appellant's certificates to teach.

### IV. Conclusion

In keeping with the foregoing, the May 26, 2006, order of the Circuit Court of Kanawha County is reversed and the matter is remanded for reinstatement of Appellant's teaching license.

Reversed and remanded.

Justices STARCHER and BENJAMIN concur and reserve the right to file concurring opinions.

STARCHER, J., concurring:

I grudgingly concur with the majority's opinion in this case.

---

11. While not weighing in our decision, we note here that the record reveals some students at Moorefield High School have expressed support for Appellant's teaching reinstatement. This support is demonstrated in the record by way of student testimony at the county board hearing and by petitions reportedly signed by students and submitted to the county board, requesting reinstatement of Appellant to his teaching post.

The appellant, Brian M. Powell, admitted responsibility for his actions that precipitated this case. He pleaded guilty to domestic battery and served time in jail. He and his family were the subject of abuse and neglect proceedings for nearly twenty months. He submitted to numerous counseling sessions. He was suspended without pay for three months by his employer, the Hardy County Board of Education.

In sum, Mr. Powell has paid a hefty price for his anger. For that reason, I concur with the majority's opinion. But my concurrence comes with reservations.

I am a firm believer that violence is an unacceptable parenting technique. No child should live in fear of physical or emotional injury from a parent. As a society, we expect responsible adults to refrain from violence when dealing with other adults; we should also expect responsible parents to refrain from violence or threats of violence toward their own children. As Mohandas Gandhi once said, "I object to violence because when it appears to do good, the good is only temporary; the evil it does is permanent." Mr. Powell, and other parents just like him, must understand that threatening or battering a child will not be tolerated in a civil society.

I partly believe that the State Superintendent of Schools was justified in pursuing additional penalties against Mr. Powell, because his misconduct toward his son makes me cringe. There is, in each of our minds, a *suspicion* that Mr. Powell might also have been similarly aggressive or abusive toward students, and had it been proven, such conduct might have warranted additional disciplinary action.

I partly also believe that if Mr. Powell had engaged in a different offense—such as sexual misconduct toward his child—this Court would have gone berserk upon seeing the State Superintendent's four-year suspension of Mr. Powell's license. The Court would probably have reversed the State Superintendent, and imposed a *greater* penalty.

But I also believe in the power of contrition. Mr. Powell has admitted his error, he has paid a serious price for his error, and no other misconduct involving students has been raised, let alone proven. On this record, the actions of the State Superintendent appear more like "piling it on," dishing out penalties that bear little relationship to the offense. Suspending Mr. Powell from teaching for four years, when there was no evidence he was unfit to teach, carried too much a load of unfairness.

I therefore respectfully, but reservedly, concur with the majority's opinion.

BENJAMIN, Justice, concurring:

I write separately to make clear that I find Appellant's conduct in beating his young son to be deplorable, cruel and worthy of punishment. Based upon this behavior, I am also concerned with his ability to control his anger when dealing with his students. It is necessary, however, to observe that the State Superintendent of Schools did not meet his required statutory burden of proof to revoke Appellant's teaching certificate on the basis of this reprehensible conduct.

It is undisputed that the county board of education disciplined Appellant relating to his conduct toward his son by suspending him without pay. The county board of education specifically rejected a recommendation by the county superintendent of schools to terminate Appellant's employment. Pursuant to W. Va.Code § 18A–3–6 (2004), the State Superintendent of Schools may not revoke a teacher's license or certificate to teach based upon conduct for which the county board of education imposed any discipline less than dismissal "*unless* it can be proven by *clear and convincing evidence*" that the teacher committed an offense set forth within the statute and the actions render him "*unfit to teach.*" W. Va.Code § 18A–3–6 (emphasis added). Further, where, as here, the statutory offense is cruelty, the State Superintendent of Schools must also demonstrate that there is "a *rational nexus* between the conduct of the teacher and the performance of his or her job." *Id.* (Emphasis added).

As noted by the majority, Appellant did not challenge the Superintendent's finding that Appellant's conduct constituted cruelty. The challenge herein was to the finding that he was unfit to teach, including whether a

rational nexus was demonstrated between the cruelty finding and his fitness to teach. It is the duty of the State Superintendent of Schools to affirmatively meet his burden of proof to impose an enhanced penalty. Where there has been no attempt to explain how Appellant's conduct toward his child impacts his fitness to teach or violates the generalized standards of teacher conduct relied upon by the State Superintendent of Schools to support his suspension order, the statutory requirement of clear and convincing evidence is not met. Similarly, the State Superintendent of Schools failed to articulate the rational nexus between the cruelty finding and Appellant's fitness to teach. While there may indeed be a rational nexus between Appellant's conduct toward his young son and his fitness to teach, the State Superintendent of Schools' failure to clearly articulate the same is fatal to his attempt to suspend Appellant's teaching certificate for a period of four years. Absent strict compliance with the statutory requirements, the State Superintendent of Schools' order to suspend Appellant's teaching certificate does not survive the current legal challenge. Accordingly, while Appellant's conduct was horrendous, I must concur with the majority decision in this matter due to the State Superintendent of Schools' failure to meet his requisite burden of proof as required by law. The punishment set by the county board of education therefore should be reinstated.