# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Kanawha County Board of Education,**
**Petitioner Below, Petitioner**

vs)  **No. 13-0810** (Kanawha County 09-AA-205)

**Jill Kimble, Respondent Below,**
**Respondent**

**FILED**

May 30, 2014

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Kanawha County Board of Education ("the board") appeals the July 2, 2013, order of the Circuit Court of Kanawha County affirming the decision of the West Virginia Public Employees Grievance Board to reinstate Respondent Jill Kimble to her employment as the head cook at an elementary school. The board is represented by counsel James W. Withrow and Billie Jo Streyle. Ms. Kimble, by counsel John Everett Roush, responds in support of the circuit court's and Grievance Board's orders.

The board argues that it was error for the lower tribunals to reverse its decision to terminate Ms. Kimble's employment as head cook. After a careful review of the parties' arguments and the record on appeal, we agree. For the reasons set forth below, we conclude that the board properly terminated Ms. Kimble's employment and we reverse the portions of the lower tribunals' orders that address the head cook position. Because the facts and legal arguments are adequately presented in the parties' briefs and the record on appeal, and the decisional process would not be significantly aided by oral argument, we find that a memorandum decision reversing the circuit court is appropriate pursuant to Rule 21 of the Rules of Appellate Procedure.

### Factual and Procedural History

During the 2007-2008 school year, the board employed Ms. Kimble as a cook and as the head cheerleading coach at a high school in Kanawha County. In December of 2007, Ms. Kimble took the cheerleaders on an overnight Christmas party held in a cabin in Nicholas County. This trip was not approved by the principal, assistant superintendent, or the board, as required by the board's policy. When the assistant superintendent and principal later learned about the trip, the principal instructed Ms. Kimble that all future out-of-county trips must have prior approval. This conversation took place while Ms. Kimble was on-duty as a cook at the high school.

Thereafter, for the 2008-2009 school year, the board employed Ms. Kimble as the head cook at an elementary school and as the head cheerleading coach at a high school, the same high school at which she had coached the prior year. Ms. Kimble initially told the cheerleaders that there was not going to be another Christmas party because Ms. Kimble "didn't feel like putting

1

in the request and going through all of that." Nevertheless, an overnight Christmas party was held for the cheerleaders in December of 2008 in the same cabin in Nicholas County. Ms. Kimble and a parent went as chaperones, and the parent rented the cabin. Ms. Kimble did not seek or obtain approval for the December of 2008 trip.

During the 2008 party, a photograph was taken of Ms. Kimble sitting in the cabin's hot tub surrounded by several of the female cheerleaders. Although Ms. Kimble was clothed, most of the girls were topless and covering their breasts with their hands and arms. All of the girls were minors. In addition, Ms. Kimble posted other photographs of the 2008 Christmas party to her MySpace account on the Internet. The students were fully clothed in the pictures that were posted. For one photograph where the girls were wearing Santa Claus hats, Ms. Kimble inserted the caption "my girls acting like their self [sic] . . . hoes[.]"

The photographs, including the hot tub photo, were discovered by parents and others and were reported to school officials. On May 27, 2009, Ms. Kimble was suspended from her employment without pay. After a pre-disciplinary evidentiary hearing, she was terminated from both her extracurricular coaching position and her position as head cook. The board adopted the findings of fact and conclusions of law of its hearing examiner, including the conclusions that Ms. Kimble had committed insubordination, immoral conduct, and sexual harassment.

Ms. Kimble challenged her termination in the Grievance Board. A Grievance Board administrative law judge ("ALJ") held an evidentiary hearing and ultimately concluded that Ms. Kimble had been insubordinate by taking the students on an out-of-county trip without the requisite approval. However, the ALJ found that the board failed to carry its burden of proving that Ms. Kimble engaged in immoral conduct or sexual harassment. The ALJ also found that the insubordinate conduct was "off-duty" in relation to Ms. Kimble's position as a head cook, and that the board did not prove a rational nexus between the misconduct and the head cook position. Accordingly, the ALJ affirmed Ms. Kimble's termination from the coach position but ordered that she be reinstated to the head cook position with an award of full back pay and benefits.

The board appealed to the circuit court the portion of the ALJ's order directing it to reinstate Ms. Kimble to the head cook position with back pay and benefits. By order dated July 2, 2013, the circuit court adopted the ALJ's findings of fact and conclusions of law and affirmed. On November 20, 2013, this Court stayed the circuit court's order pending the outcome of this appeal.

## Standard of Review

The grounds for appealing a Grievance Board decision are set forth in West Virginia Code § 6C-2-5(b) (2010 Repl. Vol.):

> A party may appeal the decision of the administrative law judge on the grounds that the decision:
> (1) Is contrary to law or a lawfully adopted rule or written policy of the employer;
> (2) Exceeds the administrative law judge's statutory authority;

(3) Is the result of fraud or deceit;

(4) Is clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or

(5) Is arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

We have articulated the following standard of review:

> 1. When reviewing the appeal of a public employees' grievance, this Court reviews decisions of the circuit court under the same standard as that by which the circuit court reviews the decision of the administrative law judge.

> 2. "Grievance rulings involve a combination of both deferential and plenary review. Since a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations. Credibility determinations made by an administrative law judge are similarly entitled to deference. Plenary review is conducted as to the conclusions of law and application of law to the facts, which are reviewed de novo." Syl. pt. 1, *Cahill v. Mercer Cnty. Bd. of Educ.*, 208 W.Va. 177, 539 S.E.2d 437 (2000).

> 3. "A final order of the hearing examiner for the West Virginia [Public] Employees Grievance Board, made pursuant to W.Va. Code, [6C–2–1], *et seq.* [ ], and based upon findings of fact, should not be reversed unless clearly wrong." Syl. pt. 1, *Randolph Cnty. Bd. of Educ. v. Scalia*, 182 W.Va. 289, 387 S.E.2d 524 (1989).

Syl. Pts. 1, 2, and 3, *Martin v. Barbour Cnty. Bd. of Educ.*, 228 W.Va. 238, 719 S.E.2d 406 (2011). With this in mind, we proceed to consider the parties' arguments.

## Discussion

West Virginia Code § 18A-2-8(a) provides that a board of education may dismiss an employee at any time for, *inter alia*, immorality or insubordination. The board argues that Ms. Kimble's insubordination with regard to the 2008 party was a sufficient basis to terminate her from both the position of head coach and the position of head cook. Furthermore, the board argues that the ALJ erred when concluding that Ms. Kimble's act of being in a hot tub with topless, minor, female students did not constitute immoral conduct justifying termination. Moreover, the board argues that when deciding the immorality issue, the ALJ erred by failing to even consider Ms. Kimble's use of the derogatory term "hoes" in describing the students on a social networking site.[1]

---

[1]Ms. Kimble was terminated on three grounds: insubordination, immorality, and sexual harassment. The ALJ rejected the sexual harassment basis, and the board does not appeal that conclusion. Accordingly, we will not address it.

3

Unquestionably, Ms. Kimble was insubordinate. As the head coach, she was responsible for the activities of the cheerleading squad, a school-sponsored student organization. Although the principal had expressly instructed her that prior approval was required, Ms. Kimble nonetheless allowed the 2008 party to take place without the requisite authorization, and she personally participated by serving as a chaperone. This constituted a willful disregard of a directive of her supervisor. We have said that for "insubordination" to be present, "(a) an employee must refuse to obey an order (or rule or regulation); (b) the refusal must be wilful; and (c) the order (or rule or regulation) must be reasonable and valid." *Butts v. Higher Educ. Interim Governing Bd./Shepherd Coll.*, 212 W.Va. 209, 212, 569 S.E.2d 456, 459 (2002). Without even considering what occurred during the party, Ms. Kimble's conduct in ignoring her supervisor's specific directive and participating in the unauthorized trip satisfied the definition of insubordination. *See Alderman v. Pocahontas Cnty. Bd. of Educ.*, 223 W.Va. 431, 675 S.E.2d 907 (2009) (holding that county board of education could properly terminate for insubordination an employee who verbally attacked members and employees of the board, and then refused to correct this behavior when the board directed him to do so).

Furthermore, when finding that Ms. Kimble did not engage in immoral conduct, the ALJ was clearly wrong in view of the reliable, probative, and substantial evidence on the whole record. We have addressed the meaning of the term "immorality" in West Virginia Code § 18A-2-8:

> Immorality is an imprecise word which means different things to different people, but in essence it also connotes conduct "not in conformity with accepted principles of right and wrong behavior; contrary to the moral code of the community; wicked; especially, not in conformity with the acceptable standards of proper sexual behavior." Webster's New Twentieth Century Dictionary Unabridged 910 (2d ed. 1979).

*Golden v. Bd. of Educ. of Harrison Cnty.*, 169 W.Va. 63, 67, 285 S.E.2d 665, 668 (1981). The record on appeal contains a copy of a photograph taken during the 2008 party. The photo depicts Ms. Kimble sitting in a hot tub surrounded, literally, by several topless female students. Such inappropriate conduct by a school board employee with students who are in her charge, is not in conformity with accepted principles of right and wrong behavior. In her brief, Ms. Kimble suggests that she was initially unaware that the girls had removed their tops, and when she became aware, she instructed them to put their tops on. This argument is belied by the photograph itself, which shows Ms. Kimble smiling and sitting very close to the topless girls, with the girls all around her.

The ALJ erroneously rejected the immorality claim by finding that these girls were all friends, they frequently changed clothes in one another's presence (such as before or after cheerleading events), and that nothing sexual occurred. However, the girls were not simply changing their clothes in the photograph. Furthermore, pursuant to the definition in *Golden*, there does not need to be sexual conduct for a school employee to engage in immorality.

In addition, when deciding the immorality issue, the ALJ should have considered the caption Ms. Kimble wrote for the photograph she posted to her MySpace page. The board found

4

that it was not acceptable for a school employee who is entrusted with the care and supervision of minor students, to refer to them using the pejorative slang word "hoes." [2]

Next, we address the ALJ's conclusion that Ms. Kimble could not be terminated from the cook position, only from the coach position. This conclusion was based upon a mistake of law. Specifically, the ALJ erred as a matter of law when finding that the "rational nexus" test should be applied in this case.

We have held that, "[i]n order to dismiss a school board employee for acts performed at a time and place separate from employment, the Board must demonstrate a 'rational nexus' between the conduct performed outside of the job and the duties the employee is to perform." Syl. Pt. 2, *Golden*, 169 W.Va. at 63, 285 S.E.2d at 666 (1981). In a later case, we reiterated the key portion of this holding: "The rational nexus test contained in Syllabus Point 2 of *Golden . . .* applies exclusively to 'acts performed at a time and place separate from employment.'" Syl. Pt. 4, *Bledsoe v. Wyoming Cnty. Bd. of Educ.*, 183 W.Va. 190, 394 S.E.2d 885 (1990). The principle underlying the rational nexus test is that an employee has a privacy interest with regard to conduct occurring outside of the scope of employment:

> We observed in *Golden* it would be an unwarranted intrusion on a teacher's right to privacy to discipline a teacher solely on evidence that statutorily delineated misconduct occurred outside of the school environment. To overcome the privacy interest, a legitimate interest of the school board has to be at stake, that is, there must be additional evidence of a resulting unfavorable impact on the teacher's fitness to teach or upon the school community. *[Golden]* at 69, 285 S.E.2d at 669. We further observed that dismissal based solely on the off-the-job misconduct of a teacher and not its effect on the teacher's fitness to teach or upon the school community would result in a statute which would be void for vagueness under substantive due process constitutional standards. *Id.* at 68-69, 285 S.E.2d at 669.

*Powell v. Paine*, 221 W.Va. 458, 463, 655 S.E.2d 204, 209 (2007) (footnote omitted).

However, the case *sub judice* does not involve conduct outside of the scope of Ms. Kimble's employment. Rather, it directly involves her conduct with students in the course of her employment. When parents entrusted Ms. Kimble with their children for this overnight trip, Ms. Kimble was acting in her role as a coach employed by the board. Ms. Kimble had no privacy interest in her activities while working as a coach. The board understandably expects that its employees will refrain from misconduct in all aspects of employment. "The Board is responsible for all aspects of the operation of the educational system in its county. The effective fulfillment of this duty requires the trust, confidence, and respect of parents and students." *Alderman v. Pocahontas Cnty. Bd. of Educ.*, 223 W.Va. 431, 443, 675 S.E.2d 907, 919 (2009).

---

[2] "Hoe" is a slang term for the word "whore." Dictionary.com, "hoe," in *Dictionary of American Slang and Colloquial Expressions*. Source location: http://dictionary.reference.com/browse/hoe. Available: http://dictionary.reference.com. Accessed: April 16, 2014.

For the foregoing reasons, we conclude that the board acted within its authority to terminate Ms. Kimble's employment as head cook and head cheerleading coach. The circuit court's and Grievance Board's orders are reversed in part, and affirmed in part. The decision to overturn the termination from the head cook position and to award back pay and benefits, is reversed. The decision to uphold the termination from the coach position is affirmed.

Affirmed in part, reversed in part.

**ISSUED:** May 30, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

**DISQUALIFIED:**

Justice Margaret L. Workman