ARLENE GOLDEN

*v.*

BOARD OF EDUCATION OF THE COUNTY OF HARRISON

(No. 15211)

Decided December 18, 1981.

Dissenting Opinion January 7, 1982.

Jacqueline A. Kinnaman for appellant.

*Irene M. Keeley, Herbert G. Underwood, Steptoe & Johnson* for appellee.

McGRAW, JUSTICE:

On March 27, 1980, the Circuit Court of Harrison County entered an order affirming the action of the Harrison County Board of Education (hereinafter cited as Board of Education or Board) wherein, pursuant to W. Va. Code § 18A-2-8 (1977 Replacement Vol.), it dismissed the appellant, Arlene Golden, from her position as high school guidance counselor.

The appellant was employed by the Board of Education as a high school guidance counselor beginning in 1974. On December 11, 1978, she was arrested at Watson's Department Store in the Middletown Mall for felony shoptlifting. On December 20, 1978, she pled *nolo contendere* in a magistrate court and was fined $100 for the misdemeanor of petty theft. News of this was published in the local newspaper.

By letter dated January 18, 1979, the Board informed Golden that it considered the shoplifting incident and the resulting fine to be a "serious act of immorality" under W. Va. Code § 18A-2-8 (1977 Replacement Vol.), and dismissed her effective January 19, 1979, pending her right to request a hearing before the Board on the matter. On January 23, 1979, Golden requested that a hearing be scheduled before the Board. The Board, meanwhile, was advised by counsel that its handling of the matter might not be in compliance with the provisions of the Code. On February 8, 1979, at a special meeting, the Board rescinded its dismissal of Golden, granting her back pay from January 19, 1979, through February 8, 1979, and

voted to suspend her pending their determination as to the merits of the charge of immorality. On February 27, 1979, a hearing was held at which Golden was present along with her West Virginia Education Association (WVEA) representatives. At the hearing of February 27, Golden elucidated the incident upon which the Board had based its action. She testified that she had been "totally distraught" because she was going to have to go to Washington, D.C., to place her aged, crippled mother, a mugging victim, into a nursing home and because subsequent to her arrival at the mall she had talked by telephone with her sixteen-year-old daughter who hysterically related that she had just wrecked the family car. While waiting for some monograming to be completed she picked up several items and walked inadvertently out of the store. She stated that she had walked 50 feet or so from the store, when she realized that the items were in her purse and stopped in order to turn around and go back to the store. She was apprehended at this time by a store detective.

At the hearing, evidence was presented by Mrs. Golden, other teachers, and school administrators, all of which went to support her professional competency. At the hearing the next day, the Board met in closed session and, based on all the evidence available to it, concluded that Golden's employment should be terminated. Mrs. Golden appealed this decision to the Circuit Court of Harrison County, which affirmed the action of the Board. It is from that judgment that she appeals.

Golden lists two reasons for the reversal of the circuit court's judgment. First, that the Board erred in failing to notify her of the charge against her and of her right to a hearing prior to her dismissal;[1] and second, because a

---

[1] This Court finds that while the Board's initial attempts to dismiss Golden were not correctly done, the Board did subsequently compensate Golden and conduct the required hearing. She agreed to this. For this reason this ground will be dismissed. *See Kesner v. Trenton,* 158 W.Va. 997, 216 S.E.2d 880 (1975); *Jiminez v. Sears Roebuck & Co.,* 4 Cal.3d 379, 482 P.2d 681 (1971); *Gilligan v. Shaw,* 441 Pa. 305, 272 A.2d 462 (1971).

misdemeanor conviction does not by itself constitute "immorality."[2] This Court finds the second argument to be persuasive and it does therefore order the reversal of the circuit court's affirmance of the Board's action and the reinstatement of Mrs. Golden with full back pay for the period of her dismissal.

Prior to examining this ground for reversal, the Court first considered several issues which, although not raised by either party, constitute additional grounds for reversal. Magistrate courts in this State are established by Chapter 50 of the State Code. W.Va. Code § 50-2-3 (1981 Cum. Supp.) provides that magistrate courts shall have jurisdiction "of all misdemeanor offenses committed in the county and to conduct preliminary examinations on warrants charging felonies." A study of the record submitted with this case reveals that the magistrate court acted beyond its jurisdiction. It issued a warrant for Mrs. Golden's arrest for what would appear to be the felony of shoplifting merchandise of a value in excess of $50. W.Va. Code § 61-3A-2 (1977 Replacement Vol.). Some nine days later another magistrate took a plea of *nolo contendere* to the charge and entered a misdemeanor conviction in his record. The magistrate was acting without jurisdiction. His lawful authority is to conduct a preliminary hearing and, upon a finding of probable cause, to bind the case over to the circuit court grand jury. It is fundamental to say that if the magistrate court finds no probable cause that the defendant committed the felony crime charged, the court is under a duty to dismiss the warrant. The magistrate court's order which shows that the defendant is guilty of a misdemeanor upon a *nolo contendere* plea to a felony charge is void.

It should also be noted that the record of this case reached this Court in an incomplete format, a format which makes review very difficult. Rule 52(a) of the West Virginia Rules of Civil Procedure requires that "[i]n all actions tried upon the facts, without a jury . . . the court

---

[2] The reader is referred to F.G. Delon, *Legal Controls on Teacher Conduct: Teacher Discipline* (NOLPE 1977) for a thorough treatment of this issue.

should find the facts especially and state separately its conclusions of law thereon." The purpose of this rule is to better enable the reviewing court to apply the law to the facts. *Commonwealth Tire Co. v. Tri-State Tire Co.*, 156 W.Va. 351, 193 S.E.2d 544 (1972). This rule is mandatory and, when not complied with a remand to the trial court is required. *Peoples Bank v. Pied Piper Retreat, Inc.*, ___ W.Va. ___, 209 S.E.2d 573 (1974). This Court has not previously placed this requirement on circuit courts when they are reviewing the decisions of county boards of education and other administrative tribunals. We do so now and require that in this case on remand and in future cases the circuit court submit findings of fact and conclusions of law with the orders in these cases.[3]

Turning to the second ground argued by the petitioner, W.Va. Code § 18A-2-8 (1977 Replacement Vol.) authorizes a county board of education to suspend or dismiss any of its employees at any time for "[i]mmorality, incompetency, cruelty, insubordination, intemperance, or willful neglect of duty." The statute does not define immorality and this Court has not been referred to, nor has it located, any case decided in West Virginia which construes the meaning of the term "immorality" within the context of this Code section.

Immorality is an imprecise word which means different things to different people, but in essence it also connotes conduct "not in conformity with accepted principles of right and wrong behavior; contrary to the moral code of the community; wicked; especially, not in conformity with the acceptable standards of proper sexual behavior." Webster's New Twentieth Century Dictionary Unabridged 910 (2d ed. 1979).

When confronted with this problem courts seek to determine if a "rational nexus" exists between the conduct complained of and the duties to be performed. In *Thurmond v. Steele*, 159 W.Va. 630, 225 S.E.2d 210 (1976),

---

[3] The law requires this of the board of education as well. *Burks v. McNeel*, 164 W.Va. 654, 264 S.E.2d 651 (1980).

which involved the dismissal of a civil service employee who was charged with driving while intoxicated, failure to obey an officer, driving recklessly, and leaving the scene of an accident in which he had been involved, the Court reversed the Civil Service Commission's dismissal on the ground that the charges were "based on conduct which had no rational nexus with the duties to be performed or the rights and interest of the public." *Id.* at 213. Thus, the primary principle to be gleaned from *Thurmond* is that conduct of a state or public employee outside the job may be examined, but disciplinary action against the employee based upon that conduct is proper only where there is a proven "rational nexus" between the conduct and the duties to be performed.

There is a corollary to this principle. Although it is undisputed that a teacher holds a strategic position in the shaping of young minds, and although the State may legitimately look into a teacher's conduct outside the classroom, *Beilan v. Board of Public Education,* 357 U.S. 399, 78 S.Ct. 1317, 2 L.Ed.2d 1414 (1958) and *Adler v. Board of Education,* 342 U.S. 485, 493, 72 S.Ct. 380, 385, 96 L.Ed. 517 (1952), nonetheless, the conduct in question must indicate unfitness to teach. No abstract characterization of the conduct *per se* as "immoral" is sufficient. In the words of the leading case in this area "[n]o person can be denied government employment because of factors unconnected with the responsibilities of that employment." *Morrison v. State Board of Education,* 1 Cal.3d 214, 235, 82 Cal. Rptr. 175, 191, 461 P.2d 375, 391 (1969). Thus, the courts look first to the question of immoral behavior and then to see if that behavior has in some way made the teacher unfit to carry out his or her responsibilities or if it has impaired or threatened the welfare of the school community. *See Morrison v. State Board of Education, supra; Erb v. Iowa State Board of Public Instruction,* 216 N.W.2d 339 (Iowa 1974); *Lindgren v. Board of Trustees, High School District No. 1,* 171 Mont. 360, 558 P.2d 468 (1976).

One reason for requiring a showing that the alleged immoral conduct has a resulting impact upon the teach-

er's fitness to teach or upon the school community is that to examine only the conduct itself would result in a statute that would be void for vagueness under substantive due process constitutional standards.

> "Without such a reasonable interpretation the terms [immoral, unprofessional, and the like] would be susceptible to so broad an application as possibly to subject to discipline virtually every teacher in the state. In the opinion of many people laziness, gluttony, vanity, selfishness, averice, and cowardice, constitute immoral conduct . . . .

> "A more constricted interpretation of "immoral", "unprofessional" and "moral turpitude" . . . enabl[es] the State Board of Education to utilize its expertise in educational matters rather than having to act "as the prophet to which is revealed the states of morals of the people of the common conscious."

*Morrison v. State Board of Education,* 1 Cal.3d at 225-27, 82 Cal.Rptr. at 382–84, 461 P.2d at 382-84.

Another reason for requiring a showing that the alleged immoral conduct has a resulting impact upon the teacher's fitness to teach or upon the school community is that to allow dismissal merely upon a showing of some immoral conduct would constitute an unwarranted intrusion upon the teacher's right of privacy. This right of privacy, while not absolute, must be balanced against the legitimate interest of the school board. The conduct of a teacher ceases to be private in at least two circumstances: (1) if the conduct directly affects the performance of the occupational responsibilities of the teacher; or (2) if, without contribution on the part of the school officials, the conduct has become the subject of such notoriety as to significantly and reasonably impair the capability of the particular teacher to discharge the responsibilities of the teaching position. *Jerry v. Board of Education of City School District of Syracuse,* 35 N.Y.2d 534, 364 N.Y. S.2d 440, 324 N.E.2d 106, 111 (1974).

In the case now before this Court, the only evidence submitted to the Board to support the charge of immoral-

ity were the records of the magistrate indicating the arrest on the aforestated charge and Mrs. Golden's plea of *nolo contendere* thereto. The Board apparently adopted the view that conviction on the misdemeanor charge was *per se* immoral conduct within the meaning of the statute, or that it could dismiss Mrs. Golden if the Board members believed that her act was inconsistent with good order and proper personal conduct. *Thurmond v. Steele, supra,* importantly, and *Morrison v. State Board of Education, supra*; and *Lindgren v. Board of Trustees, High School District No. 1, supra* hold to the contrary.

The only evidence in the record before the Board relating to fitness to teach was the favorable testimony of Mrs. Golden's fellow teachers and of the principal and assistant principal at her high school. From this evidence, the Court concludes that the Board was presented with no evidence from which it could conclude that the petitioner was unfit to teach. Indeed, the evidence indicates that it should have concluded the opposite.

For the reasons set forth above the order of the Circuit Court of Harrison County affirming the decision of the board of education of that county is hereby reversed and this action is remanded to that court with instructions to direct the board of education to reinstate Arlene Golden with restoration of the pay she lost as a result of her dismissal.

*Reversed and remanded.*

NEELY, JUSTICE, *dissenting*:

I dissent for reasons which must be so obvious that exhaustive discussion is hardly necessary. In West Virginia school attendance is compulsory—all children between the ages of six and sixteen must be under the supervision of the county boards of education regardless of whether they are enrolled in the public schools, private schools, or privately tutored. *W.Va. Code,* 18-8-1 [1951]; *State v. Riddle,* ____ W.Va. ____, ____ S.E.2d ____ (1981).

It is a denial of certain sacred parental rights to require that parents relinquish their children to the pernicious

influence of confessed misdemeanants, particularly when the misdemeanor is a crime of moral turpitude. Morally there is no difference between one who commits grand larceny and petit larceny.

The appellant was employed as a high school guidance counselor. What type of example does a confessed shoplifter set for impressionable teenagers? Since juvenile crime is among this society's most pressing social problems, is it not reasonable that we should forbear teaching crime or exalting its commission in the public schools? I can hear the dialogue now in the guidance office of this particular counselor: "Excuse me teach, but is this the right size boosting drawers for a girl my height?" or, "Say, Miss Golden, do you know a good fence for some clean, hot jewelry?"

Furthermore, I quarrel with the majority's expression: "Immorality is an imprecise word which means different things to different people. . . ." There are few reasonable people who do not consider stealing—except possibly for survival—as immoral. Certainly a reasonable person is justified in experiencing outrage when his child is *involuntarily* subjected to the influence of an authority figure and role model who advocates, at least by example, crime as a legitimate way of supplementing her income. It is this type of situation that justifies the low regard in which many persons hold the public schools. Yet in this case the schools used every effort to eliminate the problem only to be confounded by the courts.

The result in this case is absurd and works a great injustice on the Harrison County Board of Education. The Board went to a great deal of expense and trouble to rid its school system of the appellant. The people who suffer most from this Court's largess, as always, are the children and parents. Children and parents must work not only against the pernicious influences of drug dealers, other children already engaged in crime, and the host of underworld characters who profit from juvenile vice, but also they must now work against the example of the public schools themselves.