504 S.E.2d 644

Matthew J. WOO, Petitioner
below, Appellee,

v.

PUTNAM COUNTY BOARD OF
EDUCATION, Respondent
below, Appellant.

No. 24631.

Supreme Court of Appeals of
West Virginia.

Submitted May 6, 1998.

Decided June 24, 1998.

Mike Kelly, Charleston, for Appellee.

James Allan Colburn, Baer & Colburn, L.C., Huntington, for Appellant.

PER CURIAM: [1]

The appellant, Putnam County Board of Education ("the Board"), appeals a March 13, 1997 order of the Circuit Court of Kanawha County that reversed an administrative law judge ("ALJ") decision that upheld the termination of employment of the appellee, Matthew Woo, as a teacher employed by the appellant. We reverse the circuit court's

[1]. We point out that a *per curiam* opinion is not legal precedent. *See Lieving v. Hadley,* 188

decision and remand this case for reinstatement of the ALJ's decision.

## I.

The appellee was employed from 1986 to 1993 by the appellant as a math teacher at Hurricane High School. In February of 1993, appellee was arrested and charged with the felony of sale of a controlled substance, marijuana, to an undercover police operative. Upon learning of appellee's arrest, the Board transferred appellee from his teaching position to a job at the Board office that did not involve regular contact with students.

At his trial in May of 1993, appellee successfully asserted the defense of entrapment and a jury found him not guilty. However, during his testimony appellee admitted that for a couple of years he had smoked marijuana at home in the evenings on a regular basis. He denied any use of marijuana during work hours or school activities and no such use has ever been alleged.

Shortly after appellee was acquitted, in early June of 1993, two local newspaper articles about the appellee's case were published. Almost immediately after the two articles were published, a Hurricane area parent began to circulate petitions that opposed appellee's return to teaching at Hurricane High School.

Thereafter, during the summer of 1993 while the appellee was on summer break, the Board and its counsel exchanged correspondence about appellee's situation, debating what could and should be done about appellee's employment as a teacher, in the wake of appellee's acquittal and his admission of regular marijuana use.

This correspondence was leaked to the media, apparently by someone associated with the Board, and quotations from this correspondence appeared in several news stories in August 1993. The gist of these stories was the Board's likely intent to fire appellee.

On August 30, 1993, the Board met to consider appellee's possible termination. The petitions opposing his teaching at Hurri-

W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4 (1992).

cane (some 700 signatures) were given to the Board. However, the Board decided not to take action on a possible termination and instead directed its counsel to explore the possibility of appellee's transfer to another school. Soon thereafter appellee submitted a request for a transfer to a vacant teaching position in Winfield, another Putnam County school. Although this request was confidential, presumably the fact of the request was leaked, because a new set of petitions against appellee's employment as a school teacher began to circulate in Winfield, and these were delivered to the Board.

On September 24, 1993, the Board sent a letter to appellee regarding appellee's possible dismissal. This letter was also leaked to the press and quoted in a newspaper article.

On October 4, 1993, the Board voted 3–2 to dismiss appellee as a teacher, on the grounds of immorality and intemperance, citing *W.Va. Code*, 18A–2–8 [1990].[2]

Appellee grieved his termination, and after a Level IV hearing, a West Virginia Educational Employees Grievance Board ALJ upheld appellee's termination, by order dated June 2, 1994. The Circuit Court of Kanawha County, by order dated March 13, 1997, reversed the ALJ's decision. This is an appeal of that order.

## II.

■ In *Martin v. Randolph County Bd. of Educ.*, 195 W.Va. 297, 465 S.E.2d 399 (1995), this Court stated:

> This Court reviews appeals from the West Virginia Educational Employees Grievance Board under W.Va.Code, 18–29–7 (1985), which provides that a court may

set aside a decision of a hearing examiner for the Board if it is arbitrary, capricious, an abuse of discretion, or contrary to law. *Board of Education of the County of Mercer v. Wirt*, 192 W.Va. 568, 453 S.E.2d 402 (1994). The scope of review under the arbitrary and capricious standard is narrow, and a court is not to substitute its judgment for that of the hearing examiner. In *Randolph County Board of Education v. Scalia*, 182 W.Va. 289, 292, 387 S.E.2d 524, 527 (1989), Justice Miller compared the standard of review applicable to a review of an ALJ's decision under W.Va. Code, 18–29–7, to that of an administrative decision under the Administrative Procedures Act, W.Va.Code, 29A–5–4(g) (1964): "Both statutes contain virtually the same criteria for reversal of the factual findings made at the administrative level, i.e., that they are 'clearly wrong in view of the reliable, probative and substantial evidence on the record as a whole.' " In reviewing the decision of an ALJ following a Level IV grievance hearing, the circuit court should give deference to such findings. In Syllabus Point 1 of *Randolph County Board of Education v. Scalia*, *supra*, we stated:

> A final order of the hearing examiner for the West Virginia Educational Employees Grievance Board, made pursuant to W.Va.Code, 18–29–1, *et seq.* (1985), and based upon findings of fact, should not be reversed unless clearly wrong.

Similarly, in reviewing an ALJ's decision that was affirmed by the circuit court, this Court accords deference to the findings of fact made below. This Court reviews decisions of the circuit under the same stan-

---

**2.** *W.Va.Code*, 18A–2–8 (1990) states:

Notwithstanding any other provisions of law, a board may suspend or dismiss any person in its employment at any time for: Immorality, incompetency, cruelty, insubordination, intemperance, willful neglect of duty, unsatisfactory performance, the conviction of a felony or a guilty plea or a plea of nolo contendere to a felony charge. A charge of unsatisfactory performance shall not be made except as the result of an employee performance evaluation pursuant to section twelve of this article. The charges shall be stated in writing served upon the employee within two days of presentation of said charges to the board. The employee so

affected shall be given an opportunity, within five days of receiving such written notice, to request, in writing, a level four hearing and appeals pursuant to provisions of article twenty-nine, chapter eighteen of the code of West Virginia, one thousand nine hundred thirty-one, as amended, except that dismissal for the conviction of a felony or guilty plea or plea of nolo contendere to a felony charge is not by itself a grievable dismissal. An employee charged with the commission of a felony may be reassigned to duties which do not involve direct interaction with pupils pending final disposition of the charges.

dard as that by which the circuit reviews the decision of the ALJ. We must uphold any of the ALJ's factual findings that are supported by substantial evidence, and we owe substantial deference to inferences drawn from these facts. Further, the ALJ's credibility determinations are binding unless patently without basis in the record. Nonetheless, this Court must determine whether the ALJ's findings were reasoned, *i.e.*, whether he or she considered the relevant factors and explained the facts and policy concerns on which he or she relied, and whether those facts have some basis in the record. We review *de novo* the conclusions of law and application of law to the facts.

195 W.Va. at 304, 465 S.E.2d at 406.

### III.

The ALJ determined that the Board had shown that there was a rational nexus between appellee's off-duty conduct outside of his job and his ability to perform that job because of the notoriety which had attached to appellee. Such a rational nexus is required in order to permit a termination for off-duty conduct, under Syllabus Point 2 of *Golden v. Bd. of Educ.*, 169 W.Va. 63, 285 S.E.2d 665 (1981), that states:

In order to dismiss a school board employee for acts performed at a time and place separate from employment, the Board must demonstrate a "rational nexus" between the conduct performed outside of the job and the duties the employee is to perform.

This Court also said in *Golden:*

The conduct of a teacher ceases to be private in at least two circumstances: (1) if the conduct directly affects the performance of the occupational responsibilities of the teacher; or (2) if, without contribution on the part of the school officials, the conduct has become the subject of such notoriety as to significantly and reasonably impair the capability of the particular teacher to discharge the responsibilities of the teaching position.

169 W.Va. at 69, 285 S.E.2d at 669.

*W.Va.Code,* 18–29–6 (1992) states, in part: "In any grievance involving disciplinary or discharge actions ... the burden of proof is on the employer...." The Board had the burden of proof to show that there was sufficient notoriety upon which the Board based appellee's termination that was not contributed to by the Board.

The ALJ did find that *some* of appellee's notoriety was contributed to by the Board—specifically, the notoriety reflected in the later "Winfield" petitions. The ALJ further held that these petitions could not provide evidence of or support a finding of job-related notoriety sufficient to warrant termination.

However, the ALJ also found—upon an extensive record, including testimony by the person circulating the Hurricane petitions—that there was substantial notoriety regarding appellee that was independent of the Board's conduct or contribution.

Specifically, the ALJ concluded that:

Notwithstanding that PCBE [Putnam County Board of Education] "contributed" to the notoriety of Grievant's conduct ... PCBE satisfactorily established that a petition asking that Grievant "not be allowed to come back into the public school system as a teacher" was initiated and circulated by Jean Allen and a group of concerned citizens, obtaining over 700 signatures based upon the notoriety that existed independent of PCBE's improper "contribution."

Although the ALJ identified this determination as a conclusion of law, it was in fact clearly a factual determination, and as such must be reviewed under the "clearly erroneous" standard. *Martin, supra.*

Reversal of a factual finding under the "clearly erroneous" standard should not be done lightly. In *Hanlon v. Logan County Bd. of Educ,* 201 W.Va. 305, 311, 496 S.E.2d 447, 453 (1997), this Court stated:

Having once reached the circuit court by way of appeal, " '[a] final order of the hearing examiner for the West Virginia Educational Employees Grievance Board, made pursuant to *W.Va.Code,* 18–29–1, *et seq.* [ (1992) (Repl.Vol.1994) ], and based upon findings of fact, should not be reversed unless clearly wrong.' Syllabus Point 1, *Randolph County Board of Edu-*

*cation v. Scalia,* 182 W.Va. 289, 387 S.E.2d 524 (1989)." Syl. pt. 1, *Martin v. Randolph County Bd. of Educ.,* 195 W.Va. 297, 465 S.E.2d 399 (1995). That is not to say, however, that we necessarily may decide anew those matters with which we disagree with the ALJ or the circuit court.

Th[e clearly erroneous] standard does not entitle a reviewing court to reverse the finder of fact simply because it may have decided the case differently.... Indeed, if the lower tribunal's conclusion is plausible when viewing the evidence in its entirety, the appellate court may not reverse even if it would have weighed the evidence differently[.]

*Board of Educ. of County of Mercer v. Wirt,* 192 W.Va. 568, 578–79, 453 S.E.2d 402, 412–13 (1994) (citing *Anderson v. Bessemer City,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518, 528 (1985)) (footnotes omitted). See also Syl. pt. 1, in part, *In the Interest of Tiffany Marie S.,* 196 W.Va. 223, 470 S.E.2d 177 (1996) ("A finding [of fact] is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.").

*Id.*

In the instant case, the circuit judge disagreed with the ALJ's factual determination that there was substantial untainted notoriety regarding appellee. The circuit court reasoned that the Board essentially had to prove that each of the signatures on the Hurricane petitions were unaffected by the leaked information, since the leaking occurred during the time the Hurricane petitions were circulating.

Although the Board had the burden to prove sufficient notoriety that did not result from the Board's contribution, we do not see how this general burden translates into a specific burden to *disprove* the possible effect of Board-"tainted" leaked information on each of the 700 petition signers' decision to protest appellee's continuation as a teacher.

Such a burden would be practically impossible.

Rather, to prevail on this factual issue the Board could and did show to the ALJ's satisfaction, through Board officials and the petition circulators, that it was more likely than not that there was a substantial amount of "untainted" notoriety regarding the appellee. The circuit court thus erred in reversing the ALJ's factual finding as to the existence of substantial notoriety regarding the appellee that was free of Board contribution.

Based on this (erroneous) reversal of the ALJ's factual finding, the circuit court ruled as a matter of law that there were no facts upon which the Board or the ALJ could permissibly conclude that there was a "rational nexus" between the appellee's off-duty conduct and his teaching duties, as required by *Golden, supra.*

However, because the circuit court's reversal of the ALJ's factual finding was erroneous, the court's legal ruling was also erroneous. The Board and the ALJ did have a basis for finding a "rational nexus," that in turn permitted the Board to terminate the appellee for his off-duty conduct.

### IV.

Consequently, we reverse the order of the circuit court, and remand this case for reinstatement of the decision of the ALJ.

Reversed and remanded.