## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Stantec Consulting Services, Inc.,**
**Plaintiff Below, Petitioner**

**FILED**

October 18, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs) No. 12-1400** (Kanawha County 09-C-2192)

**Thrasher Environmental, Inc.,**
**and Dayton Carpenter,**
**Defendants Below, Respondents**

### MEMORANDUM DECISION

Petitioner Stantec Consulting Services, Inc., by counsel Michael J. Schessler, appeals the order from the Circuit Court of Kanawha County granting judgment as a matter of law to respondents during trial. Respondents Thrasher Environmental, by counsel Kathryn K. Allen, and Dayton Carpenter, by counsel John B. Cromer, filed a joint response to which petitioner filed its reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

In June of 2005, petitioner entered into a contract with the West Virginia Department of Environmental Protection ("DEP") to develop a reclamation plan and design water treatment facilities to eliminate problems associated with the uncontrolled mine drainage at an abandoned mine site in Upshur County. The work directive from the DEP to petitioner contained no mention of the acceptable water treatment facility effluent discharge limits. However, in its proposal to the DEP, petitioner agreed to prepare construction plans and specifications for mediation of mining related environmental problems and referenced an effluent discharge goal of .5 mg/l of iron daily average. Evidence presented at trial affirmatively established that the DEP self-imposed technology-based standard for iron effluent discharge limits from abandoned mine sites was 3.0 mg/l.

Petitioner, as prime engineer on the project, entered into a sub-consulting agreement with Thrasher Environmental, Inc. ("Thrasher"); the terms of that agreement are set forth in a letter dated July 6, 2005. This letter specifically states that the DEP proposes certain items to remove elevated iron concentrations to <0.5 mg/l iron average. However, this agreement also states that Thrasher was to design a water treatment process and plant to treat water containing 15 mg/l iron, 500 mg/l alkalinity, and a pH of 7.4 to 7.6 mg/l. Dayton Carpenter ("Carpenter") agreed to

act as the consultant to petitioner. The sub-consulting services were only a portion of the engineering services undertaken by petitioner for the DEP. The sub-consulting agreement also provides that the results of water quality studies being conducted by the DEP approved environmental testing laboratory were to be reviewed by respondents.

The project was built in accordance with the design plans, and it was placed into operation in October of 2007. At that time, the iron concentration levels coming into the plant were approximately 3.0 mg/l, representing a change in condition from the design parameters set forth by petitioner.[1] Monthly test results since March of 2008 show water flowing into the treatment facility contained iron concentrations of 2.0 mg/l of iron or less, with limited exceptions. The DEP complained that petitioner failed to deliver a facility that conformed to the .5 mg/l iron effluent goal referenced in the contract between petitioner and the DEP. Petitioner claims that the problem was caused by respondents' negligent design of the water treatment plant, which constituted a breach of the sub-consulting agreement. Petitioner undertook modifications to the facility in an attempt to satisfy the demands of the DEP. Despite these modifications, evidence presented at trial shows that since the redesigned and modified plant has been operational, the DEP has refused to accept the facility, the plant has not consistently met the DEP's goal of .5 mg/l iron, and has not been able to consistently run the designed capacity of water flow.

Petitioner filed suit against respondents for negligence and breach of contract, seeking to recover the costs it claims it incurred to redesign and reconstruct the facility to meet the .5 mg/l iron level goal. On September 24, 2012, the action went to jury trial. At the close of petitioner's case-in-chief, respondents jointly moved for judgment as a matter of law pursuant to Rule 50 of the West Virginia Rules of Civil Procedure. Following oral argument on the motion, the circuit court granted judgment as a matter of law in favor of respondents (defendants below) and entered its order on October 11, 2012. In that order, the circuit court found that respondents' duty to petitioner is set forth in the contract between petitioner and respondents and that petitioner failed to introduce expert testimony to establish that respondents breached the standard of care in performing the duties they were contractually obligated to perform. The circuit court found that the design parameters and water quality and quantity characteristics were given to respondents by petitioner, and respondents were entitled to rely on the information provided in their performance of services. The court also found that neither respondent was a party to the contract between petitioner and the DEP. The circuit court concluded that respondents performed the scope of work set forth under their sub-consulting agreement with petitioner. Petitioner accepted the work performed by respondents and incorporated the plans and specifications into its engineering plans delivered to the DEP. The DEP accepted the plans and specifications and authorized petitioner to proceed with the project under the same.

The circuit court further found that petitioner failed to introduce evidence to support a prima facie showing that the water treatment process designed by respondents breached the generally accepted standard of care for engineers practicing in the same locality under similar circumstances; that petitioner failed to make a prima facie showing that respondents' actions or inactions were the proximate cause of the injuries asserted by petitioner; and that petitioner failed to make a prima facie showing that respondents breached their contract with petitioner. The court

---

[1]As set forth herein, the influent iron level reportedly impacts the effluent iron level following treatment in the water treatment plant.

ultimately concluded that when viewed in the light most favorable to petitioner, there was no legally sufficient evidentiary basis for a reasonable jury to find for petitioner.[2] It is from this order that petitioner appeals.

> "The appellate standard of review for the granting of a motion for a [judgment as a matter of law] pursuant to Rule 50 of the West Virginia Rules of Civil Procedure is de novo. On appeal, this court, after considering the evidence in the light most favorable to the nonmoving party, will sustain the granting of a [judgment as a matter of law] when only one reasonable conclusion as to the verdict can be reached. But if reasonable minds could differ as to the importance and sufficiency of the evidence, a circuit court's ruling granting a directed verdict will be reversed." Syllabus Point 3, *Brannon v. Riffle*, 197 W.Va. 97, 475 S.E.2d 97 (1996).

Syl. Pt. 5, *Smith v. First Cmty. Bancshares, Inc.*, 212 W.Va. 809, 575 S.E.2d 419 (2002). Rule 50(a)(1) of the West Virginia Rules of Civil Procedure states, "[i]f during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party . . . ."

Petitioner asserts six assignments of error, the majority of which relate to the factual findings of the circuit court in its order granting judgment as a matter of law in favor of respondents. However, these factual findings are reviewed under the clearly erroneous standard. Clearly erroneous is a "highly deferential" standard of review. *Tennant v. Marion Health Care Foundation, Inc.*, 194 W.Va. 97, 106, 459 S.E.2d 374, 383 (1995). Findings of fact are not to be made de novo by an appellate court: "[u]nder this standard, appellate courts cannot presume to decide factual issues anew. Our precedent ordains that deference be paid to the trier's assessment of the evidence." *Fraternal Order of Police, Lodge No. 69 v. City of Fairmont,* 196 W.Va. 97, 100 n.4, 468 S.E.2d 712, 715 n.4 (1996). *See also Hanlon v. Logan County Bd. of Ed.*, 201 W.Va. 305, 311, 496 S.E.2d 447, 453 (1997). "[C]lear-error review ordinarily heralds a rocky road for an appellant." *Fraternal Order of Police*, 196 W.Va. at 100 n.4, 468 S.E.2d at 715 n.4. Reversal of a factual finding under the clearly erroneous standard should not be done lightly. *Woo v. Putnam County Bd. of Educ.*, 202 W.Va. 409, 412, 504 S.E.2d 644, 647 (1998).

> "A finding [of fact] is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety."

---

[2]In addition to granting judgment as a matter of law, the circuit court addressed respondents' counterclaim to recover sums allegedly due and owing to them by petitioner for services performed under the contract. The circuit court held the counterclaim in abeyance and found that if the matter is retried, respondents would be permitted to present those claims to the jury on retrial.

Syl. Pt. 1, in part, *In re Tiffany Marie S.,* 196 W.Va. 223, 470 S.E.2d 177 (1996). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Frymier-Halloran v. Paige,* 193 W.Va. 687, 695 n.13, 458 S.E.2d 780, 788 n.13 (1995) (quoting *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 574 (1985) (Citation omitted)).

"[W]e should not reverse a trier of fact on a question of credibility when the trier of fact had the advantage of hearing the testimony." *State v. Stuart,* 192 W.Va. 428, 433, 452 S.E.2d 886, 891 (1994). "The clearly erroneous rule loses none of its rigor 'when the [lower] court's findings do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences from other facts.'" *Fraternal Order of Police*, 196 W.Va. at 100, n.4, 468 S.E.2d at 715, n.4 (quoting *Anderson v. City of Bessemer City,* 470 U.S. at 574). "We will disturb only those factual findings that strike us wrong with the 'force of a five-week-old, unrefrigerated dead fish.'" *Brown v. Gobble,* 196 W.Va. 559, 563, 474 S.E.2d 489, 493 (1996) (quoting *United States v. Markling,* 7 F.3d 1309, 1319 (7th Cir.1993)).

## I.    Considering the evidence in the light most favorable to the nonmoving party.

Petitioner first argues that the circuit court erred in granting respondents' motion for judgment as a matter of law because the court failed to resolve all reasonable doubts and inferences in favor of petitioner and substituted its judgment, assuming the role of the jury. Petitioner argues that by granting respondents' motion, the circuit court failed to provide every reasonable and legitimate inference fairly arising from the testimony and evidence submitted and failed to view the same in the light most favorable to petitioner.  In order to establish a prima facie case of professional negligence in West Virginia, a plaintiff must show that a defendant has been guilty of some act or omission in violation of a duty owed to the plaintiff and that such act or omission caused the injury complained of. *Aikens v. Debow*, 208 W.Va. 486, 490, 541 S.E.2d 576, 580 (2000); *Tolley v. ACT Indus., Inc.*, 212 W.Va. 548, 558, 575 S.E.2d 158, 168 (2002). In the instant case, the expert testimony presented by petitioner failed to establish that respondents deviated from the standard of care for engineers in the design of a water treatment facility. In its order granting judgment as a matter of law, the circuit court stated that petitioner's expert witness testified that she had never independently designed a wastewater treatment facility; she had no opinion on how the treatment process facility should have been designed; and she acknowledged that when the iron levels in the water flowing into the plant were elevated by the addition of ferric chloride to the design parameters given to respondents, the plant, as designed, met DEP goals. Based on the record before this Court, considering the evidence in the light most favorable to petitioner, we find that only one conclusion as to the verdict can be reached. Therefore, we find that the circuit court did not err in granting respondents' motion for judgment as a matter of law.

## II.    No contractual obligation to meet the .5 mg/l iron goal.

Petitioner's next assignment of error is that the circuit court erred in granting respondents' motion when it concluded that respondents owed no contractual obligation to petitioner or the DEP to meet discharge specifications of .5 mg/l iron and that Thrasher performed the scope of their work set forth in the sub-consulting agreement with petitioner.

Petitioner argues that the evidence submitted clearly showed that Thrasher agreed to design the plant to treat influent water to reduce effluent water iron concentrations to .5 mg/l and failed to do so. Petitioner points to a letter it claims is direct evidence of Thrasher's awareness that it had a contractual obligation or duty to the DEP and to petitioner to make the plant work. In this case, petitioner failed to introduce any testimony to support a breach of contract claim. This is based in part on the fact that the influent water flow at the time the plant operations differed so greatly from the parameters provided by petitioner to respondents. Therefore, the circuit court's findings of fact addressed in this assignment of error were not clearly erroneous.

### III.    Design acceptance by the DEP and petitioner.

Petitioner's third assignment of error is that the circuit court erred by granting judgment to respondents because it inappropriately relied upon the acceptance of the design by petitioner and the DEP to dismiss claims of breach of contract and negligence. Petitioner asserts that West Virginia law allows petitioner to recover the costs it incurred to cure and conform the plant based on Thrasher's breach of contract and/or failure to render professional services with ordinary skill, care, and diligence commensurate with that of professional engineers in similar circumstances. Respondents assert that the circuit court properly directed judgment because petitioner failed to establish a prima facie right of recovery and the judgment was not predicated upon the acceptance of the design by petitioner and the DEP. They also argue that petitioner's and the DEP's acceptance of the design proposed by respondents does not allay the circuit court's finding that the prima facie burden was not met since it is not a material fact upon which the judgment rests. The circuit court found that petitioner accepted the work performed by respondents and incorporated the plans and specifications into its engineering plans delivered to the DEP. It also found that the DEP accepted the plans and specifications submitted by petitioner and authorized petitioner to proceed with the project under the submitted plans. It is undisputed that the facility was built according to those plans and that the plans were based on the design specifications provided by petitioner to respondents. Our review of the record shows that while the circuit court made these findings, there was ample evidence on the record to support the circuit court's grant of judgment in favor of respondents without this factual finding. Therefore, we cannot conclude that the circuit court's finding on this issue was clearly erroneous.

### IV.    Resolving all questions of fact as to applicable iron discharge standards in favor of petitioner.

Petitioner's fourth assignment of error also deals with what it claims is the circuit court's failure to resolve all questions of fact in favor of respondent before granting judgment to respondents. Petitioner argues that the circuit court erred in granting judgment as to petitioner's breach of contract claims by resolving all questions of fact as to the applicable iron discharge standard in favor of respondent, whereby conflicting evidence showed that Thrasher agreed to design the plant to meet the .5 mg/l discharge standard and failed to deliver the same. Petitioner is critical of the circuit court's finding that a draft permit issued from the DEP authorized effluent discharge with limits of 3.0 mg/l iron and that that permit is consistent with the DEP's self-imposed limit of 3.0 mg/l iron. Petitioner contends that the same is irrelevant because Thrasher agreed to a standard of .5 mg/l iron. However, petitioner's argument ignores the undisputed fact that petitioner provided the design parameters to respondents and respondents

designed the water treatment system according to those parameters. *See Parkette, Inc. v. Micro Outdoors Adver., LLC*, 217 W.Va. 151, 617 S.E.2d 501 (2005). Under the facts of this case, we cannot find that the circuit court's finding on this issue meet the standard of being clearly erroneous.

**V.      The water treatment plant's ability to meet the effluent discharge standard set forth in the contract between the DEP and petitioner.**

The fifth assignment of error is that the circuit court erred by granting judgment finding that there was no evidence introduced by petitioner to establish with reasonable certainty when, if ever, the redesigned and reconstructed plant would meet the effluent discharge standard set by the contract and accepted by the DEP. Petitioner argues that the circuit court improperly resolved questions of fact created by testimony, concluding that the DEP would not have enough water to operate the plant at its maximum capacity. Petitioner criticizes the circuit court's conclusion that the plant did not meet the .5 goal during operation when, petitioner contends, evidence was introduced that showed the plant operated and met the effluent discharge goals at flow levels less than anticipated. It also argues that sufficient evidence was presented to permit a reasonable jury to decide whether the modifications were reasonable and effective and whether the plant would meet the effluent discharge goals. However, the evidence in the record shows that the redesigned and modified plant did not meet the .5 mg/l goal at the design flow rate and was not accepted by the DEP. The record also shows that the DEP representative and petitioner's representative, Robert Simm, concede that the redesigned and modified plant has not operated at 1,000 gallons per minute and that it is unknown whether the plant will achieve the desired goal of .5 mg/l for a sustained length of time. Based on the testimony at trial and the concessions by the witnesses, we cannot find that the circuit court's finding of fact regarding the plant meeting the effluent discharge standard of .5 mg/l iron will be met is clearly erroneous.

**VI.      Resolving questions of fact as to the reasonable necessity of the changes made by petitioner.**

Petitioner's sixth and final assignment of error is that the circuit court erred by granting judgment because it improperly resolved questions of fact as to the reasonable necessity of the changes made by petitioner when faced with competing evidence of alternate means to cure the plant, the effectiveness of those changes, or that the conduct of respondents caused petitioner to incur costs and expenses to remedy the defects in Thrasher's design of the plant. Petitioner contends that evidence was presented showing how Thrasher's design of the plant would not meet the .5 mg/l standard and that modifications were necessary, reasonable, and effective in getting the plant to meet that standard at varying flow rates. Petitioner argues that this was sufficient to establish a prima facie claim that respondents' actions or inactions were the proximate cause of the injuries asserted by petitioner, that the costs incurred by petitioner to redesign and reconstruct the facility were reasonable and necessary, and that petitioner made a prima facie showing that respondents breached their contract with petitioner.

> "Compensatory damages recoverable by an injured party incurred through the breach of a contractual obligation are those as may fairly and reasonably be considered as arising naturally - that is, according to the usual course of things -

from the breach of the contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of its breach." Syllabus Point 2, *Kentucky Fried Chicken of Morgantown, Inc. v. Sellaro*, 158 W.Va. 708, 214 S.E.2d 823 (1975).

Syl. Pt. 1, *Desco Corp. v. Harry W. Trushel Const. Co.*, 186 W.Va. 430, 413 S.E.2d 85 (1991). In order to recover a second category of damages, consequential damages, a plaintiff must show that at the time of the contract the parties could have reasonably anticipated that these damages would be a probable result of a breach. *Id.* at 434, 413 S.E.2d at 89. Petitioner does not allege that the parties could have reasonably anticipated that the alleged damages would be a probable result of a breach. Further, petitioner failed to present evidence to support its claim for compensatory damages, as petitioner failed to present sufficient evidence as to the reasonable necessity of the redesign of the plant necessary to allow a jury to address this issue. For these reasons, we again find that the circuit court's factual findings on this issue were not clearly erroneous.

As set forth above, this Court considers the evidence before it in the light most favorable to petitioner, the nonmoving party, and will sustain the granting of a judgment as a matter of law when only one reasonable conclusion as to the verdict can be reached. Syl. Pt. 3, *Brannon v. Riffle*, 197 W.Va. 97, 475 S.E.2d 97 (1996). Syl. Pt. 5, *First Cmty. Bancshares, Inc.*, at 812, 575 S.E.2d at 421. In this case, petitioner provided certain parameters to defendants to be used in the design of the water treatment plant. One of those parameters was an influent iron level of 15 mg/l. However, the record shows that the influent iron levels at the time of operation are substantially lower than the levels provided by petitioner to respondents at the time of the agreement, approximately 6.25 to 8.49 mg/l. The evidence also shows that after treatment, prior to the redesign, the iron levels in the influent water met the legal standards set by the DEP. The expert testimony introduced by plaintiff failed to establish prima facie negligence or breach of contract. Therefore, considering the evidence in the light most favorable to petitioner, we find that the only reasonable conclusion as to the verdict is that respondents are entitled to judgment.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** October 18, 2013

**CONCURRED IN BY:**

Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II

**DISSENTING:**

Chief Justice Brent D. Benjamin
Justice Margaret L. Workman