# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**CABELL COUNTY BOARD OF EDUCATION,**
**Petitioner**

**FILED**

**June 15, 2016**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs) No. 14-1213** (Kanawha County 12-AA-60)

**LENNIE DALE ADKINS,**
**Respondent**

## MEMORANDUM DECISION

Petitioner Cabell County Board of Education ("BOE"), by counsel, Howard E. Seufer and Joshua A. Cottle, appeals the October 21, 2014, order of the Circuit Court of Kanawha County that reversed an order of the West Virginia Public Employee Grievance Board ("Grievance Board"). The Grievance Board's order indefinitely suspended respondent Lennie Dale Adkins without pay while felony child pornography charges were pending against him. Adkins appeared through his counsel, Dennis E. Kelley and Donald R. Jarrell.

This Court has considered the parties' briefs, oral arguments, and the appendix record on appeal. Under the limited circumstances presented in this case and because of the clear error committed below, we find a memorandum decision reversing the circuit court appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

Adkins was employed by the BOE as a teacher/librarian.[1] Law enforcement received credible information that Adkins solicited minor children through instant messaging services. As part of the investigation, law enforcement seized a number of computers and other electronic items from Adkins's home in 2011. The West Virginia State Police Digital Forensic Lab analyzed these items, finding that in 2008, Adkins solicited pornographic pictures of a then 16-year-old student. The Forensic Lab also found six pornographic pictures of a 17-year-old student.

The criminal complaints brought against Adkins alleged he had been using his computer to carry on inappropriate conversations with students, suggesting pornography websites, questioning their sexual orientation, and making homosexual suggestions. Eight complaints allege that Adkins distributed and exhibited material depicting minors

---

[1] The record is unclear on Adkins' actual job title. In some instances he is referred to as a librarian; at other times he is identified as a teacher.

1

engaging in sexually explicit conduct in violation of W. Va. Code § 61-8C-3 (2014). One complaint alleged that Adkins used a minor to produce obscene material or assist in doing explicit conduct in violation of W. Va. Code § 61-8A-5 (2000). All of the criminal complaints alleged that Adkins solicited minors through his computer via instant messaging, engaging in inappropriate conversations, suggesting pornography sites, questioning their sexual orientation and making homosexual suggestions.[2]

On May 26, 2011, Adkins spoke with the superintendent of Cabell County Schools about his impending arrest. Following their conversation, the superintendent placed Adkins on paid administrative leave until further notice. The superintendent made formal this action in a letter to Adkins dated May 26, 2011. Adkins was arrested the next day.

On June 13, 2011, the superintendent met with Adkins regarding the criminal charges. By letter dated June 15, 2011, the superintendent advised Adkins that he intended to recommend to the BOE that Adkins be suspended with pay from May 26, 2011, to June 6, 2011, and that the BOE terminate Adkins's employment contract effective July 6, 2011.

Approximately three weeks later, by letter dated July 8, 2011, the superintendent informed Adkins that he did not intend to ask the BOE to affirm his paid suspension or termination. Instead, the superintendent wrote that he was suspending Adkins without pay, effective the date of the letter. This same letter contained notice that the matter of Adkins's suspension would be placed on the BOE meeting agenda for the July 18, 2011, meeting, at which time the superintendent would recommend that the BOE ratify these suspension actions and extend Adkins's suspension without pay until the criminal charges were resolved. The letter requested that Adkins notify the superintendent in writing by July 15, 2011, if he wanted to appear at this hearing. The letter also advised Adkins that he had the right to be represented by counsel and to present evidence on his own behalf. The certified mail receipt indicated that this letter was received by Adkins on July 12, 2011.

Neither Adkins nor his attorney appeared at the BOE meeting on July 18, 2011. During the meeting, the BOE ratified the superintendent's actions, suspending Adkins with pay from May 28, 2011, to June 6, 2011, and suspending him without pay from July 8, 2011, until the resolution of the criminal charges against him. By letter dated July 20, 2011, the superintendent informed Adkins of the BOE's decision

---

[2] In September of 2012, the State dropped all charges against Adkins after the circuit court suppressed the computer evidence seized by investigating authorities prior to his arrest.

Adkins filed a grievance with the Grievance Board challenging the BOE's decision on July 22, 2011. He argued that the BOE should have placed him in a position without contact with students and that the BOE acted in excess of its authority because there had been no conviction on the charges against him. Adkins sought to be reinstated to his position with back pay for that time he was suspended without pay.

A hearing was held before the Grievance Board on November 1, 2011. The facts were largely uncontested and exhibits included the various letters from the superintendent and BOE to Adkins, copies of the criminal complaints pending against Adkins, Adkins's bail agreements, and other magistrate court documents. At the time of the grievance hearing, three of the criminal charges against Adkins had been dismissed and Adkins had not been indicted on these charges. The charges left pending included allegations of misconduct involving students at the schools where Adkins worked.

The administrative law judge ("ALJ") denied Adkins's grievance, finding that the BOE had established the charges against Adkins by a preponderance of the evidence, pursuant to the BOE's procedural rules. *See* W. Va. Code. R. § 156-1-3 (2008). Acknowledging that Adkins was presumed innocent of the charges, the ALJ relied upon previous decisions of the Grievance Board upholding the right of a board of education to indefinitely suspend an employee without pay while criminal proceedings are conducted so long as some particular event will eventually bring about a conclusion to the suspension. *See Blaney v. Wood Cty. Bd. of Educ.*, Docket No. 03-54-169 (Jan. 16, 2004); *Hicks v. Monongalia Cty. Bd. of Educ.*, Docket No. 04-30-183 (Aug. 13, 2004); *Dobbins v. Nicholas Cty. Bd. of Educ.*, Docket No. 03-34-396 (Mar. 9, 2005). The ALJ determined that it was immaterial whether Adkins had been indicted, and it concluded that his suspension was justified because there was a rational nexus between his alleged conduct and his employment.

Adkins appealed the Grievance Board decision to the Circuit Court of Kanawha County. In an order entered October 21, 2014, the circuit court reversed the decision of the Grievance Board, concluding that the BOE was not empowered under W. Va. Code § 18A-2-8 (2007) (quoted *infra*) to suspend Adkins on the basis of his arrest on felony charges. Specifically, the court determined that because Adkins had not been indicted on the felony charges and had not been convicted of or pled guilty or nolo contendere to any of the pending charges, the BOE had exceeded its statutory authority. The court noted that the BOE could have sought suspension under other provisions of the statute, such as immorality, but instead relied on a public policy argument that the BOE was obligated and responsible for protecting its students by maintaining a safe and secure environment. In its brief to the circuit court, the BOE explained that it opted not to suspend on the basis of immorality because it then would have had to present evidence that could conflict with or hamper potential criminal proceedings.

3

The BOE now appeals the circuit court's October 21, 2014, order, arguing that the BOE did not exceed its statutory authority with regard to its disposition of Adkins's case. This Court reviews decisions of the circuit court in grievance board proceedings as follows: "When reviewing the appeal of a public employees' grievance, this Court reviews decisions of the circuit court under the same standard as that by which the circuit court reviews the decision of the administrative law judge." Syl. pt. 1, *Martin v. Barbour Cty. Bd. of Educ.*, 228 W. Va. 238, 719 S.E.2d 406 (2011). W. Va. Code § 29A-5-4(g) (1998) provides the standard to be applied by circuit courts in reviewing decisions of administrative law judges as follows:

> The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioner have been prejudiced because the administrative findings, inferences, conclusions, decision or order are:
> (1)    In violation of constitutional or statutory provisions; or
> (2)    In excess of the statutory authority or jurisdiction of the agency; or
> (3)    Made upon unlawful procedures; or
> (4)    Affected by other error of law; or
> (5)    Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or
> (6)    Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

As well as the statutory grounds for review, this Court has held:

> Grievance rulings involve a combination of both deferential and plenary review. Since a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations. Credibility determinations made by an administrative law judge are similarly entitled to deference. Plenary review is conducted as to the conclusions of law and application of law to the facts, which are reviewed de novo.

Syl. pt. 1, *Cahill v. Mercer Cty. Bd. of Educ.*, 208 W. Va. 177, 539 S.E.2d 437 (2000).

At issue in this case is whether the BOE's decision was contrary to law. In concluding that the Grievance Board's decision required reversal, the circuit court relied on W. Va. Code § 18A-2-8(a), which provides that "[n]otwithstanding any other provision of law, a [BOE] may suspend or dismiss any person at any time for: Immorality, incompetency, cruelty, insubordination, intemperance, willful neglect of

4

duty, unsatisfactory performance, the conviction of a felony or plea of nolo contendere to a felony charge." *See also* syl. pt. 3, *Beverlin v. Bd. of Educ. of Lewis Cty.*, 158 W. Va. 1067, 216 S.E.2d 554 (1975) ("The authority of a county board of education to dismiss a teacher under *W. Va. Code* 1931, 18A-2-8, as amended, must be based upon the just causes listed therein and must be exercised reasonably, not arbitrarily or capriciously."). The circuit court determined that the superintendent and BOE did not have the statutory authority to suspend Adkins without pay because being charged with a crime is not named as a justification for suspension without pay in W. Va. Code § 18A-2-8(a). The BOE maintains that its decision was in accordance with its constitutionally mandated duty to provide a safe, secure, and suitable environment for students.

In light of a related appeal decided by this Court, appeal no. 14-0628, we find disingenuous Adkins's argument that the BOE's failure to include immorality as a basis for his suspension violates W. Va. Code § 18A-2-8. That appeal arose from the BOE's decision to terminate Adkins's employment. Based on the same facts as those in the present case—that Adkins solicited sexually explicit photographs from underage students—the BOE terminated Adkins's employment[3] on the ground that Adkins's conduct constituted immorality.[4] Adkins filed a grievance, challenging the BOE's decision. The Grievance Board denied the grievance,[5] and on appeal to the circuit court,

---

[3] We note that in the separate grievance it was established that on September 17, 2013, Adkins surrendered his teaching license. The State Superintendent of Schools revoked Adkins's license to teach in West Virginia on September 19, 2013.

[4] We have stated:

> "Immorality is an imprecise word which means different things to different people, but in essence it also connotes conduct "not in conformity with accepted principles of right and wrong behavior; contrary to the moral code of the community; wicked; especially, not in conformity with the acceptable standards of proper sexual behavior." Webster's New Twentieth Century Dictionary Unabridged 910 (2d ed. 1979).

*Golden v. Bd. of Educ. of Harrison Cty.*, 169 W. Va. 63, 67, 285 S.E.2d 665, 668 (1981).

[5] The ALJ also found Adkins to be insubordinate because his "actions were sufficiently knowing and intentional as to represent a defiance of the established standards of expected conduct in the Code of Conduct for school personnel."

5

the decision was affirmed. His appeal to this Court was dismissed for his failure to comply with the Rules of Appellate Procedure.[6]

The two cases are intertwined; while the proceedings giving rise to the instant appeal involving Adkins's suspension began before the proceedings in the related appeal involving Adkins's termination, both cases are based on identical facts, involve the same parties, and implicate the same law. The termination case was fully litigated to finality between Adkins and the BOE, and the factual and legal determinations in that case are binding upon the parties herein. Thus, just as immorality was the basis of Adkins's termination, immorality must also have been a basis for his suspension.

The doctrine of collateral estoppel was explained by this Court in syllabus point 1 of *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995):

> Collateral estoppel will bar a claim if four conditions are met: (1) The issue previously decided is identical to the one presented in the action in question; (2) there is a final adjudication on the merits of the prior action; (3) the party against whom the doctrine is invoked was a party or in privity with a party to a prior action; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

Collateral estoppel, or issue preclusion, applies to the decisions of administrative agencies. *See* syl. pt. 2, *Vest v. Bd. of Educ. of the Cty. of Nicholas*, 193 W. Va. 222, 455 S.E.2d 781 (1995) ("For issue or claim preclusion to attach to quasi-judicial determinations of administrative agencies, at least where there is no statutory authority directing otherwise, the prior decision must be rendered pursuant to the agency's adjudicatory authority and the procedures employed by the agency must be substantially similar to those used in a court. In addition, the identicality of the issues litigated is a key component to the application of administrative *res judicata* or collateral estoppel.").

All requisite factors for collateral estoppel are present in this instant appeal. The parties are the same in both grievance proceedings; the facts upon which the BOE based its decisions are identical; and Adkins had a full opportunity to litigate the related appeal, although his actions led to the dismissal of the appeal. Applying our jurisprudence on issue preclusion, we conclude that the immoral actions of Adkins justifying his termination likewise justified his initial suspension.

---

[6] This Court's dismissal order found that Adkins's brief "appear[ed] to be merely a recycled version of what was filed in circuit court, with little to no attempt to set out how the circuit court erred."

For these reasons, the order of the Circuit Court of Kanawha County entered on October 21, 2014, is reversed, and the suspension of Adkins without pay is affirmed.

Reversed.

**ISSUED:  June 15, 2016**

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Allen H. Loughry II

**DISQUALIFIED:**

Justice Margaret L. Workman